ANNA A. SIELING ET AL. *v.* JOHANN SIELING ET AL.

*Trusts—Requisites to Creation—Trustee as Beneficiary—Power of Disposition in Settlor—Parents Declaring Trust for Children.*

One person can hold as trustee for the use and benefit of himself and others, and consequently parents may declare that they hold their property as trustees for the benefit of themselves, or the survivor, and their children.        pp. 543-548

A trust is not invalid because, by reason of the reservation of a power of disposition in the settlors, there may be nothing remaining at the time at which the ultimate beneficiaries are to receive it.        pp. 548, 549

Generally speaking, the creation of a valid trust requires a definite subject-matter within the settlor's disposition; a lawful, definite, object to which the subject-matter is to be devoted; and clear and unequivocal words or acts devoting the subject-matter to the object of the trust.        p. 549

The delivery of the trust property to the *cestui que trust* is not essential to the valid creation of an express trust, whether a third person or the creator himself is constituted trustee.

p. 550

Md.]                    **Syllabus.**

An agreement by parents with their children, in considera-
tion of the children's work on the parents' farm, not to give
away any of their property, and that, on the death of the sur-
viving parent, all the parents' property should go to the chil-
dren in proportions to be determined by the length of their
work on the farm, reserving, however, to the parents the right
to dispose of their property otherwise than by gift or marriage,
*held* to create a valid trust for the children, with the parents as
trustees.                    pp. 550-552

No technical words or language are required for the crea-
tion of a trust, if the language and acts of the parties clearly
indicate that such was their intention.                    p. 551

*Decided December 3rd, 1926.*

Appeal from the Circuit Court for Howard County (FOR-
SYTHE, J.).

Bill by Anna A. Sieling and others against Johann Sieling
and others. From a decree dismissing the bill, plaintiffs
appeal. Reversed.

The cause was argued before BOND, C. J., URNER, ADKINS,
OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*James U. Dennis* and *Ogle Marbury,* for the appellants.

*Eldridge Hood Young* and *James Clark,* with whom were
*Young & Crothers* on the brief, for the appellees.

DIGGES, J., delivered the opinion of the Court.

The bill in this case was filed in the Circuit Court for
Howard County by four of the children of Johann Sieling
and Anna Sieling, his first wife, against Johann Sieling and
Amelia C. Sieling, his second wife, and one of the children
by the first marriage, Henry J. W. Sieling. An answer was
filed by the defendant Henry J. W. Sieling, admitting the
allegations of the bill and consenting to a proper decree. An
answer was also filed by the defendants Johann Sieling and
Amelia C. Sieling, making denials of certain of the allega-
tions of the bill and also demurring to each and every para-
graph thereof. The complainants subsequently filed a de-

murrer to the answer of Johann Sieling and Amelia C. Siel-
ing. The case was thereupon heard upon the bill, answer, and
demurrers to the bill and answer. The chancellor overruled
the complainants' demurrer to the defendants' answer, sus-
tained the defendants' demurrer to the bill of complaint, and
dissolved the preliminary injunction theretofore granted,
with leave to the complainants to amend the bill of com-
plaint. The complainants declining to amend, the chancellor
passed a decree dismissing the bill, with costs to the defend-
ants. From this decree the present appeal is prosecuted.

The allegations of the bill of complaint, which upon de-
murrer must be assumed to be true, are substantially as fol-
lows: That Johann Sieling, also known as John H. Sieling,
and Anna Sieling, his first wife, who died on April 15th,
1920, came to Howard County between forty and fifty years
ago and purchased a farm in that county near Guilford, which
was conveyed to them as tenants by the entireties by a deed
from Richard H. Dorsey *et al.,* dated September 4th, 1882,
and duly recorded among the land records of that county;
that this farm contained 275 acres and was later added to by
an additional purchase from Emily L. Dorsey by deed dated
February 15th, 1915; that on this property the father and
mother of the complainants made their home and raised
their children, these children being the complainants, together
with the defendant Henry J. W. Sieling and another son,
William Sieling, who died unmarried, intestate, without
issue, on April 17th, 1897; that as the children were growing
up, the conduct of their father, Johann Sieling, towards them
was exceedingly harsh and arbitrary, and they were com-
pelled to work very hard upon the farm property and allowed
little liberty and no money. That under these conditions it
became apparent to the wife and mother, Anna Sieling, that
the children would all leave home as soon as they respectively
reached their majorities, and that she and her husband would
be left without the care and companionship of the children,
the farm property would be without the labor of the chil-
dren, and the fortunes of herself and her husband would

suffer thereby. That the said Anna Sieling, the mother, thereupon arranged with her husband, Johann Sieling, to agree that the property which he and she had acquired, in the shape of the farm property and the personal property thereon, and any other property which they might thereafter acquire by their labor and diligence, would be held for the benefit of the children and should not be alienated from them; that this agreement was originally made verbally by the said husband and wife with all of their children, but that later a formal paper in the nature of a declaration of trust covering said agreement was drawn up and executed by the said Johann Sieling and Anna Sieling, dated June 2nd, 1900, which paper writing was filed as an exhibit with the bill, and is in the following words:

> "We, the undersigned, John Sicling and Anna, his wife, do hereby agree, promise and obligate ourselves and each of us, to our children, that in consideration of the help rendered us by them and to be rendered, in the conduct of our farm and household. we will *not give* away from them any of the property or estate we now have or may hereafter acquire, but that all which the survivor of us may have or be entitled to at the time of his or her death, shall go to them at the death of the survivor of us, thus: to each one of them that works at home for us at the rate of one hundred dollars per annum, from the time he or she attained the age of twenty years, and any excess as the survivor of us may appoint in writing, and in default thereof, to be divided equally among our children.
>
> "This, however, is not to prevent or hinder us or either of us, in any way, from selling or otherwise (save by gift or marriage) disposing of any such property.
>
> "Dated this 2nd day of June, A. D. 1900.
>
> (Signed)   "Johann Sieling,<br>"Anna Sieling."

That Anna A. Sieling, one of the children, worked at the home of her father and mother approximately ten years after

she attained the age of twenty years; that Elise Dorsey, another of said children, so worked approximately eight years; that Frederick W. Sieling, another child, so worked for approximately seven years; and that Henry J. W. Sieling, another of said children, so worked approximately twelve years, all without any compensation whatsoever from the said Johann Sieling and the said Anna Sieling. That on the 5th day of June, 1922, the said Johann Sieling, having become solely entitled to said property by the death of his wife Anna Sieling, sold to one of his sons, Henry J. W. Sieling, the home property, together with the personal property, then owned by the said Johann Sieling; that the said Johann Sieling, as a result of the industry and thrift of the entire family, and with funds which had been either produced on the home property or raised by virtue of mortgages thereon, had acquired other property in Howard County, and that he subsequently sold the same to his son, the defendant Henry J. W. Sieling, and as a part of the purchase price received from his son a mortgage for the sum of $6,000, which is now overdue and which the said son, Henry J. W. Sieling, is now about to pay to his father, the said Johann Sieling. That in addition to the said $6,000 secured by said mortgage, the defendant Johann Sieling had to your orators' knowledge the sum of approximately $5,000 in cash which he recently withdrew from a bank in Howard County, the same being also the proceeds of the property which the said Johann Sieling and Anna Sieling had acquired from time to time as a result of the labor and work performed by the entire family upon the home property. That the said Johann Sieling is now in his eighty-fifth year, and has recently married a second time, to the defendant Amelia C. Sieling, and is now residing in Baltimore City; that since the marriage of the said Johann Sieling to the said Amelia C. Sieling, the said Johann Sieling has received by deed from Charles F. Raymo *et al.,* dated November 18th, 1925, and recorded among the land records of Baltimore City, an interest with his wife, as tenants by the entireties, in certain property located in said city and known as 219 North Calhoun Street; that your

orators have no means of knowing whether any or all of said
sum of $5,000 has been invested in the purchase of said prop-
erty, or not. That the said Johann Sieling has repeatedly
stated that he is going to see that when he dies there is no
property left for his children, and has repeatedly violated his
paper writing or declaration of trust of June 2nd, 1900, by
giving away considerable sums of money, and has recently
violated same by virtue of his second marriage; that unless
the property which he now holds, consisting of the $6,000
about to be paid him, the $5,000 in cash, and his interest in
the property No. 219 North Calhoun Street, and any other
property, real and personal, of which he may be possessed,
is declared to be held in trust under the provisions of the
paper writing of June 2nd, 1900, for the benefit of your
orators and the said Henry J. W. Sieling, and for the benefit
of the said Johann Sieling as therein set forth, he will speed-
ily dissipate the entire fund, in violation of said paper-writ-
ing, and the interest of your orators and the other parties
entitled thereto will be dissipated and lost entirely.

The prayers of the bill are, that the court take jurisdic-
tion and administer the trust estate created by the paper-
writing of June 2nd, 1900; that Henry J. W. Sieling be re-
strained from paying the mortgage debt to his father, and
be required to pay the same into court pending the determina-
tion of this suit; that a receiver be appointed to hold the
said fund, and any other funds that may come into his hands
herein, pending the determination of this suit, and that such
receiver may be authorized and directed to release said mort-
gage to the said Henry J. W. Sieling, when the same shall
have been paid to him; that the said mortgage debt of $6,000,
and the said sum of $5,000, and the interest of the said
Johann Sieling in the property known as 219 North Cal-
houn Street, in the City of Baltimore, and any and all other
property now owned or held by the said Johann Sieling, may
be declared to be held in trust under the terms of the said
paper-writing of June 2nd, 1900, for the benefit of your
orators and such other persons who may be entitled thereto,
and that a trustee may be appointed to hold the same and

administer said trust under the direction of this court; that
the said Johann Sieling may be enjoined, pending the deter-
mination of this proceeding, from alienating or disposing of
any of said moneys or property without the order of this
court; that the said Johann Sieling may be required to make
a full and true discovery and report of the exact amount of
money, and amount and character of property, which he now
holds, and the source from which the same was derived, and
where the same is located.

The defendant Johann Sieling in his answer denies that
the complainants have any interest in the leasehold property
No. 219 North Calhoun Street, and also denies the alleged
threats attributed to him, and avers that under the law he is
entitled to make such disposition of his own property and
estate as to him seems just and proper; and further denies
that he ever made any valid or enforceable contract or decla-
ration of trust of any kind, of the nature set up in the bill
of complaint. He admits signing the paper writing of June
2nd, 1900, but denies that said paper writing ever became a
valid and enforceable contract, or any part of a valid and
enforceable contract, or ever became a valid and enforceable
declaration of trust, or that he ever made a valid and en-
forceable contract or declaration of trust of any kind of the
nature set up in the bill of complaint; and denies that he
entered into any binding legal verbal arrangement with his
then wife, Anna Sieling, as to the disposition of their prop-
erty as alleged.

It will thus be seen that the first question presented for
our determination is whether or not the paper writing signed
by Johann Sieling and Anna Sieling, together with the at-
tendant circumstances as shown by the allegations of the bill,
constitutes a legally binding declaration of trust. It is
contended by the appellees that it does not, for two rea-
sons: First, that there must be a complete separation of the
legal estate and the beneficial enjoyment, even in the case of
a trust created or continued in the party from whom the
bounty emanates; the transaction must show that the entire
equitable interest is parted with; if the legal and equitable

estates come together in the same person, the equitable is merged in the legal and the trust is terminated; and, second, that because in the paper writing of June 2nd, 1900, the settlors reserve.the right to sell or otherwise dispose of any property mentioned therein, except by way of gift or marriage, and therefore might so dispose of the property as to leave nothing at the time of the death of Johann Sieling, there could be no valid trust. These contentions were made in the court below and appear largely to be the basis upon which the learned chancellor acted in passing the decree in this case. We will consider them in the order stated.

The authorities relied upon in support of the first proposition, namely, that there must be a complete separation of the legal estate and the beneficial enjoyment, are 26 R. C. L. 1186, sec. 22, and *Doan v. Ascension Parish,* 103 Md. 662, the last case being the authority cited by the author in support of the text found in *Ruling Case Law.* In the section quoted from 26 R. C. L., the author, after stating the rule as contended for by the appellees and adopted by the chancellor, states: "It has been said, however, that a trust does not fail by the appointment of a beneficiary as trustee"; citing in support of the last statement *Clark v. Callahan,* 105 Md. 600. In that case, quoting from the syllabus, it is said: "When property is transferred to one upon the faith of his promise to divide it between himself and another, equity will enforce the trust thereby created." In *Carson v. Phelps,* 40 Md. 73, we quoted with approval from *Lewin on Trusts,* p. 56: "If a settlor purpose to convert himself into a trustee, then the trust is perfectly created, and will be enforced so soon as the settlor has executed an express declaration of trust, intended to be final and binding upon him, and in this case it is immaterial whether the nature of the property be legal or equitable, whether it be capable or incapable of transfer." And again, in the same case, quoting from *Hill on Trustees,* p. 63, it is said: "A trustee of real or personal property may be created by any formal instrument, whether deed or will, which passes the legal title to the trust estate, and con-

tains a proper declaration of trust; or without any transmuta-
tion of possession, the owner of property may convert him-
self into a trustee of it by a proper declaration of trust."

In *Brandau v. McCurley,* 124 Md. 243, at 248, we said:
"An owner of property can in his individual capacity make
a valid conveyance, in this state, to himself· as trustee."

And in *Stone v. National City Bank,* 126 Md. 235, quot-
ing from the opinion of Lord Cranworth in *Jones v. Lock,*
L. R. 1 Ch. 25, we said: "If I give any chattel, that of course
passes by delivery; and if I expressly or impliedly say I con-
stitute myself trustee of such and such personal property for
a person, that is a trust executed, and this court will enforce
it, in the absence of fraud, even in favor of a volunteer. * * *
The authorities all turn upon the question whether what took
place was a declaration of trust or merely an imperfect at-
tempt to make a legal transfer of the property. In the latter
case the court will afford no assistance to volunteers; but
when the court considers that there has been a declaration
of trust, it is a trust executed, and the court will enforce it
whether with or without consideration. * * * It is the donor's
act which originates the trust, and it is the intention with
which he does the act that is material."

Again, in *Milholland v. Whalen,* 89 Md. 218, this Court,
speaking through Judge McSherry, said: "Nor does the cir-
cumstance that the depositor makes himself a beneficiary
jointly with another, prevent the trust from attaching to the
fund. A trust is not rendered void by the appointment of a
beneficiary as trustee. 1 *Perry on Trusts,* sec. 297; *Woods
v. Woods,* 1 M. & Cr. 401; *Crockett v. Crockett,* 1 Hare, 451;
*S. C.,* 2 Phill. 553; *Hill on Trustees,* 65, note 1; *Story v.
Palmer,* 46 N. J. Eq. 1; *Rogers v. Rogers,* 18 Hun. 409.
* * * The declaration of trust transferred to the trustee the
legal title for the benefit of the survivor of the two *cestuis
que trustent,* as to the balance of the fund remaining in bank
at the death of either. By the terms of the declaration of
trust, upon the death of Miss O'Neil, the balance on deposit
became Mrs. Whalen's property, not by a gift and delivery

of the bank book, nor by the right of survivorship as one of
two joint owners, nor by a gift of the funds *inter vivos;* but
purely and exclusively because the trust, as declared in 1895,
stripped Miss O'Neil of her individual ownership of the
money, and vested the money in her in trust, as to this
balance, for Mrs. Whalen, if the latter happened to outlive
Miss O'Neil."

In the last-mentioned case the declaration of trust con-
cerned a savings bank deposit, in which Miss O'Neill con-
stituted herself, by her declaration, trustee for the benefit
of herself and her sister, Mrs. Whalen, joint owners, subject
to the order of either, the balance, at the death of either, to
belong to the survivor; and this Court held that there was
a valid declaration of trust impressed upon the funds in
bank, the bank holding them, not as trustee, but for the trus-
tee, the trustee being seised of the money for the use of her-
self and her sister as joint owners of the equitable interest,
both being authorized to draw the funds upon producing the
bank book, and the balance at the death of either to belong
to the survivor.

A careful reading of the case of *Doan v. Ascension Parish,*
103 Md. 662, will disclose that the Court, in the expressions
it used, was referring to the whole of the equitable estate and
the whole of the legal estate. There can be no doubt that a
transfer of the whole of the legal title to A as trustee for the
benefit of himself, as to the whole of the equitable title, is
not a valid declaration of trust, for the apparent reason that
the legal and equitable titles would merge and A would be-
come a fee-simple owner of the whole estate. It was this
kind of a case with which the Court was dealing in *Doan v.
Ascension Parish, supra.* The clause of the will construed
by this Court in that case was as follows: "I give and devise
said land in said deed described and thereby conveyed, to
the Vestry of Ascension Church, Ascension Parish, in West-
minster, Carroll County, Maryland, to be used for such
church purposes as the rector of said church shall or may

direct, it being my purpose and desire that the said land and buildings thereon shall be under the control of the rector of the Ascension Church, and shall be used for such work as he may deem for the best interest of Ascension Church." Judge Pearce, speaking for the Court, said: "The plaintiffs assert that this devise creates a trust in its subject-matter, and that the trust thus created is void, because its objects are not ascertained, and also because, even if ascertained, it is a perpetuity; while the defendants contend that the devise is of a fee-simple estate, to the Vestry of the Parish of the Ascension, and not a trust, and that the only construction of the subsequent clause relating to the control of the said land and buildings by the rector of the parish is that it is an attempt to engraft upon the fee a naked collateral power to cut down the fee, to which the law will not permit effect to be given. Mr. Hill in his work on *Trustees* (4th Amer. Ed.), star page 44, says: 'Before the relation of trustee can be constituted, there must necessarily exist: 1st, a subject-matter for a proper trust; 2nd, a person competent to create a trust; 3rd, one capable of holding property as trustee, and 4th, a person for whose benefit the trust property is held, who is known by the somewhat barbarous appellation of *cestui que trust.*' In the case at bar the land and buildings devised are proper subject-matter for a trust; the devisor is competent to create a trust, and the devisee is capable of taking and holding property as a trustee; but there must still be found within the terms of the devise a *cestui que trust.* On page 55 Mr. Hill says: 'The legal owner of property is *prima facie* entitled to its beneficial enjoyment, and in order to convert him into a trustee, there must be a sufficient indication of the intention of the parties that he should hold the estate for the benefit of others.' To effect this conversion there must be a proper declaration of trust, for it is not the legal conveyance, or the transfer of the property, but the declaration of the trust, that operates in the creation of the trustee. It is apparent therefore that wherever a trust is alleged to be created by any instrument or instruments, there must be a separa-

tion of the legal estate from the beneficial enjoyment, and that a trust cannot exist where the same person possesses both. As expressed by Mr. Lewin in his work on Trusts, vol. 1, p. 14, 1st Am. Ed.: 'A trust is a confidence reposed in some other than the *cestui que trust,* for which the *cestui que trust* has no remedy but by subpoena in chancery; * * * for as a man cannot sue a subpoena against himself, he cannot be said to hold upon trust for himself. If the legal and equitable interests happen to meet in the same person, the equitable is forever merged in the legal.' " It is apparent that what the Court was dealing with, and what the writer of the opinion had in mind when using the above quoted language, was the proposition that whenever the whole legal and equitable title became vested in the same person, a merger resulted. This is made manifest by the language at page 670, where the Court says: "Holding, as we do, that the purposes and uses for which she desired this property to be used were the corporate purposes of the donee, it is immaterial that she wished the rector to determine for which of these corporate uses it should be employed, or whether this was determined by the rector or by the vestry. Inasmuch as the whole beneficial interest in the property is given to the Vestry of the Parish of the Ascension, the true reading of the will is, that the estate given is not an estate given in trust, but one devised to the corporation for its general and corporate purposes. * * * The legal estate and beneficial interest being thus vested in the defendant, the estate it takes is an absolute fee-simple. The rector has neither an estate nor interest in the subject of the devise, and the power which the testatrix desired to be exercised by him of designating the particular corporate uses to which it should be applied, was not to be exercised for his own benefit or that of another, but for that of the vestry alone."

Upon the foregoing authorities it is clear that one person can hold as trustee for the use and benefit of himself and others, and it is only when the full beneficial and equitable

titles become vested in the same person that a merger takes place.

It follows that in our opinion it was competent for Johann Sieling and Anna Sieling, his first wife, to declare that they held their property as trustees for the benefit of themselves, or the survivor, and their children.

The second proposition urged by the appellees as negativing the creation of the trust, in that, because the settlors reserved to themselves the right of disposing of the property except by way of gift or marriage, and therefore it might be possible that at the death of the survivor of the settlors there would be no property to be affected by the trust, is, in our opinion, likewise untenable. In determining whether or not a valid trust has been declared, it is not necessary or controlling that it should be evident that some portion of the property, which is the subject of the declaration of trust, remain at the time when the ultimate beneficiaries are to receive it. It is true that, if the settlor reserves the right to use the property, and does use it in accordance with the terms of the trust, as evidenced from the intention of the parties, there may be nothing remaining at the death of the settlor; but the question of whether or not a trust has been created cannot be made to depend upon whether there may or may not be property existing at the time the beneficiaries are entitled to the enjoyment thereof. In the case of *Milholland v. Whalen, supra,* this Court held that there was a valid subsisting trust created from the time Miss O'Neil made the deposit in the bank in the form in which it was made, and that without regard to the fact that she retained the possession of the pass-book, by which she might have withdrawn all of the funds, which were the subject of the trust, before her death. It will be seen in that case that the settlor retained at least as complete control and dominion over the subject of the trust as is contained in the instrument of writing in this case made by Johann Sieling and Anna Sieling; the effect in that case being that if there was any money remaining in bank which was the subject of trust at the

death of the settlor, it should go, by virtue of the declaration of trust, to her sister. She might have used all of the property which was the subject of trust, and her sister, the other beneficiary, could not complain or intervene in any way until the death of the settlor. The case now being considered differs from that case in that the settlors agreed and declared by the written instrument of June 2nd, 1900, that they would not dispose of the property from their children by way of gift or marriage; and the bill alleges that Johann Sieling has violated this provision of the declaration "by giving away considerable sums of money," and "has repeatedly stated that he is going to see that when he dies there is no property left for his children"; and the bill further alleges that subsequent to his second marriage he had purchased the property 219 North Calhoun Street, in Baltimore City, and had the title conveyed to himself and his second wife as tenants by the entireties, but that the complainants have no means of knowing whether the purchase money for this property was money derived from the Howard County property, and asks that the defendant Johann Sieling be required to make a full and true discovery and report of the exact amount of money and amount and character of property which he now holds, and the source from which the same was derived, and where the same is located.

Generally speaking, in order to create a valid trust, three circumstances must concur: First, a definite subject-matter within the disposition of the settlor; second, a lawful, definite object to which the subject-matter is to be devoted; third, clear and unequivocal words or acts devoting the subject-matter to the object of the trust. 28 *Am. & Eng. Encyc. of Law,* 865, 866. Or, as stated in 39 *Cyc.* 34: "To constitute an express trust, various combinations of elements have been said to be essential, the most common one being: Sufficient words to create it; a definite subject, and a certain and ascertained object. It would seem, however, that the elements of an express trust, as distinguished from the acts or words necessary to create it, are the same as those of all trusts,

and consist of a trust *res* or subject-matter, and the holding
of the legal title of that property by one person for the benefit
of another, while the matters requisite to create such a trust
are a sufficient declaration of trust, evidencing an intention
to create a trust and setting out the trust property, terms and
parties with reasonable certainty, and a transfer of the legal
title by the owner of the property to a trustee to be held for
the benefit of another, or a retention of title by the owner
under circumstances which clearly and unequivocally disclose
an intent to hold for the use of another." And at page 66 it
is said: "It is not essential in all cases that the creator of a
trust constitute a third person trustee and transfer the legal
title to him, for it is well settled that one may create a trust
in his own property by constituting himself trustee, provided
his words or acts clearly and unequivocally denote an inten-
tion to hold henceforth as trustee for the benefit of another."
Neither is the delivery of the trust property to the *cestui
que trust* essential to the valid creation of an express trust,
whether a third person or the creator himself is constituted
trustee. In Mr. Hill's work on Trustees (4th Am. Ed.),
star page 44, hereinbefore quoted in a citation from *Doan v.
Ascension Parish, supra,* it is stated that it is essential for
the constitution of a valid trust that there must exist, "first,
a subject-matter for a proper trust; second, a person compe-
tent to create a trust; third, one capable of holding the prop-
erty as trustee; and, fourth, a person for whose benefit the
trust property is held."

Applying these principles to the paper writing with which
we are concerned in this case, we find that it contains all
of the essentials held by the authorities to be necessary for
the creation of a valid express trust. First, we have the prop-
erty, real and personal, owned by Johann Sieling and Anna
Sieling, his wife, as the proper subject-matter for a trust;
second, we have in the persons of Johann Sieling and Anna
Sieling settlors competent to create a trust; third, we have
in the said settlors, or the survivor, persons capable of hold-
ing as trustees, and, fourth, we have in the person of the

settlors and their children persons for whose benefit the trust property is held, or, as is stated, persons proper to be *cestuis que trustent.* All of these elements being present, we have now only to examine the question of whether or not, by the written instrument and the surrounding circumstances, there is evident a clear and unequivocal intention to create a trust.

In *Lewin on Trusts,* page 83, it is said: "It is essential to the creation of a trust that there should be the intention of creating a trust, and, therefore, if upon a consideration of all the circumstances the court is of the opinion that the settlor did not mean to create a trust, the court will not impute a trust where none in fact was contemplated." In the case of *Mills v. Hayden,* 128 Wash. 67, annotated in 34 *A. L. R.* 1372, this rule is thus stated: "Whether a trust has been perfectly created is largely a question of fact in each case, and the court, in determining the fact, will give effect to the situation and relation of the parties, the nature and situation of the property, and the purposes or objects which the settlor had in view. The burden of proving the existence of a trust rests on the person asserting it, and he must prove it by clear and satisfactory evidence, having in view all the surrounding facts and circumstances and the intention of the parties." To the same effect see 26 *R. C. L.* 1203, sec. 44, and *Doan v. Ascension Parish, supra.*

No technical words or language are required for the creation of a trust, if the language and acts of the parties clearly indicate that such was their intention. Neither does the writing have to be in any particular form. *Maccubbin v. Cromwell,* 7 G. & J. 164. Practically all the authorities are in agreement on this point. The paper writing signed by Johann Sieling and Anna Sieling, in our opinion, clearly evidences an intention to declare a trust. It declares that Johann Sieling and Anna Sieling, his wife, "do hereby agree, promise and obligate ourselves and each of us, to our children, that * * * we will not give away from them any of the property or estate we now have or may hereafter acquire, and that all which the survivor of us may have or be entitled to at the

time of his or her death, shall go to them at the death of the survivor of us." It also states the consideration for which the declaration is made, namely, the help rendered and to be rendered in the conduct of the farm and household by the children. It further provides how the property shall be distributed at the death of the survivor of the settlors, by giving to each one of the children the sum of one hundred dollars per annum for each year he or she may work at the home after he or she arrives at the age of twenty years; and that any excess after such distribution shall go as the survivor of the settlors may appoint in writing, and in default of such appointment, to be divided equally among the children. Finally it provides that nothing said therein shall prevent or hinder the settlors or either of them from selling or otherwise disposing of any such property, save by gift or marriage. Taking, in connection with the written instrument, the circumstances as disclosed by the allegations of the bill, we find that at the time of the declaration of trust, the settlors being husband and wife and owning the property as tenants by the entireties, the wife and mother became convinced that by reason of the harsh and penurious treatment of the children by the father they would leave the common home upon arrival at their respective majorities and the father and mother would be left without their aid and assistance upon the farm and in the household; that she communicated her fears and beliefs in this respect to the husband and father; that the father and mother then agreed with each other and with the children that they would hold the property for the children and not dispose of it by gift or marriage; that subsequent to this oral understanding and agreement, the same was reduced to writing and took the form of the written paper which we have been discussing; that acting upon the terms of said oral agreement and paper writing, the children did not leave the home, but some of them stayed and rendered service for periods ranging from seven to twelve years, the aggregate number of years of service rendered by all being thirty-seven, and this without any compensation whatever;

that although this agreement was made in 1900, there was
no suggestion of a breach of any of its conditions, but it was
lived up to in good faith by all of the parties in interest for
twenty years, or until the death of the wife and mother. In
our opinion, these circumstances clearly indicate a definite
and unequivocal purpose on the part of the settlors to declare
and create a trust. Holding that a valid trust was created
in this case, and it appearing from the allegations of the bill
that the terms of the trust are being violated by Johann Siel-
ing, surviving trustee, by giving away portions of the trust
property and making repeated threats of his intention to dis-
pose of it all, so that his children might get nothing, we are
of the opinion that the chancellor erred in sustaining the
demurrer to the bill of complaint, and that if the complain-
ants substantiate their allegations by competent proof they
are entitled to relief. We will, therefore, reverse the decree
of the chancellor and remand the case for further proceedings.

> *Decree reversed, and case remanded for further
> proceedings, in accordance with the views
> herein expressed, with costs to the appel-
> lants.*

OFFUTT, J., concurs in the result.

PARKE, J., dissents.