**In re Andrew G. SHANK, Debtor.**

**In re Barbara M. Shank, Debtor.**

**Bankruptcy Nos. 95–5–5498–SD, 96–5–7271–SD.**

United States Bankruptcy Court, D. Maryland, at Baltimore.

Oct. 1, 1999.

**218**

Marc R. Kivitz, Baltimore, MD, for Debtors.

David M. Katinsky, Trial Attorney, Tax Division, Washington, DC, for Internal Revenue Service.

William L. Hallam, Michael G. Gallerizzo, Gebhardt & Smith, Baltimore, MD, for FMB Bank and York Bank & Trust Company.

David S. Musgrave, Piper & Marbury, Baltimore, MD, for First Union National Bank.

Karen H. Moore, Assistant U.S. Trustee, Office of U.S. Trustee, Baltimore, MD, for U.S. Trustee.

## MEMORANDUM AND ORDER DECLARING DEBTORS TO BE RESPONSIBLE FOR FILING TAX RETURNS AND PAYING TAXES IN CONNECTION WITH DISPOSITION OF ASSETS SOLD PURSUANT TO DEBTORS' PLAN OF REORGANIZATION

E. STEPHEN DERBY, Bankruptcy Judge.

### I. Introduction

This contested matter arises upon the filing of a Joint Motion to Determine Tax Liability by FNB Bank, York Bank & Trust Company, and Waring S. Justis, Jr. (Movants). The former two movants are unsecured claim holders of the Debtors; the latter movant is the "Creditor's Representative," who was appointed pursuant to the Debtors' confirmed plan of reorganization. Although the Debtors oppose the relief sought by the Joint Motion, the facts are not disputed, and the court is presented solely with a legal issue. The issue is whether the Creditors' Representative or the Debtors are responsible for filing federal income tax returns and paying the taxes incurred in connection with the liquidation of assets sold as part of the Debtors' confirmed plan of reorganization.

The Internal Revenue Service (IRS) filed a motion to dismiss the Joint Motion to Determine Tax Liability because the Movants failed to serve the IRS properly. After the IRS motion was filed, Movants filed a Supplemental Certificate of Service that the IRS had been served in the manner prescribed in Fed. R. Bankr.P. 7004(b)(5). The IRS subsequently filed a Statement With Respect to Joint Motion to Determine Tax Liability, in which the IRS stated that it took no position on the mer-

its of the Joint Motion to Determine Tax Liability. In its Statement, however, the IRS requests that the court make a definitive determination as to which party is liable for the returns and taxes at issue.

For the reasons stated below, the court holds that the Debtors are required to file tax returns and to pay the taxes incurred in connection with the liquidation of assets pursuant to Debtors' plan of reorganization.

## II. Background

Debtor Andrew G. Shank filed a petition under Chapter 11 on July 31, 1995. Debtor Barbara M. Shank filed a petition under Chapter 11 on August 2, 1996. After a series of unsuccessful attempts by Andrew Shank to obtain approval of a disclosure statement, Debtors' filed a joint disclosure statement and plan on August 15, 1996.[1] On September 27, 1996, this court granted final approval of Debtors' disclosure statement and confirmed Debtors' First Amended Joint Chapter 11 Plan of Reorganization (the Plan).[2]

The Debtors' Plan called for the disposition of estate property by two methods. The first method was for the estate to transfer property collateral to secured claim holders in full satisfaction of each recipient's allowed secured claim. The second method called for the sale of various assets, the proceeds of which would be distributed first to secured claim holders in satisfaction of their allowed secured claims, second to priority claimants, and the remainder to unsecured claim holders. *See* Plan, Art. IV. The Debtors used an undefined term, "Asset Pool," to describe the group of assets that were to be sold for the benefit of secured claim holders, priority claim holders, and unsecured claim holders:

In order to create a pool of assets for the repayment of Allowed Unsecured Claims, the Debtor, prior to or simultaneously with the Confirmation of this Plan, shall grant all holders of Allowed Unsecured Claims a security interest in those assets which are to comprise the Asset Pool pursuant to documents that are acceptable to the holders of the Allowed Unsecured Claims in all respects. The Asset Pool will consist of the following assets: ....

Plan, § 5.4(a).

The Plan also appointed a Creditors' Representative "to administer and liquidate the Asset Pool for the benefit of the Debtors' Creditors as provided for in th[e] Plan." Plan § 1.15. The Creditors' Representative's specific duties included the following:

(a) Manage the assets in the Asset Pool, including, without limitation, collecting all rents, profits and earnings arising from the same and paying all mortgages, taxes and other expenses due and owing with respect to such assets from the rents, profits and earnings of the Asset Pool;

(b) Maintain all cash/depository accounts for the Asset Pool;

(c) Determine the listing price and negotiate the sale of the real properties in the Asset Pool and negotiate the sale of the other interests in the Asset Pool. The Creditors' Representative shall have the sole authority to determine when and whether to effect the sale of an asset in the Asset Pool;

(d) Cause disbursements to be made to the holders of the Allowed Unsecured Claims as provided for in this Plan;

(e) Prepare and disburse the checks for disbursements to creditors holding Allowed Unsecured Claims ...;

---

1. Prior to Barbara M. Shank's filing for bankruptcy protection, Debtor Andrew G. Shank filed six disclosure statements, the last of which was only conditionally approved. *See* P. 196 in case no. 95–5–5498–SD.

2. In Andrew G. Shank's bankruptcy case, Case No. 95–5–5498–SD, the Debtors' Plan is docket entry P. 229, and the Order confirming the Plan is docket entry P. 240.

(f) In the event that the Creditors Representative is unable to sell or otherwise liquidate any asset in the Asset Pool within a time period that is acceptable to the Creditors' Representative, the Creditor's Representative shall then be authorized to auction or otherwise liquidate such asset in a fashion that the Creditor's Representative, in his sole and absolute discretion, deems appropriate.

Plan, § 9.1. The Creditors' Representative was to be paid from the proceeds of the assets in the Asset Pool "in accordance with the provisions of the United States Bankruptcy Code ... governing compensations...." *Id.* §§ 1.15, 4.1B.

The Debtors' duties under the Plan included the following:

(a) Convey the deeds in lieu of foreclosure, and any mortgages, to the appropriate parties as provided in th[e] Plan;

(b) Convey the deeds to the real properties in the Asset Pool as directed by the Creditors' Representative;

(c) Provide to the Creditors' Representative all information and documentation reasonably requested by the Creditor's Representative;

(d) Assist in the listing, marketing and sale of the properties in the Asset Pool;

(e) Assist the Creditor's Representative with the current tenants of the real properties comprising the Asset Pool;

(f) Grant all holders of Allowed Unsecured Claims the security interest in the Asset Pool as provided for and required under Section 5.4 of th[e] Plan;

Plan § 9.2.

As to the post-confirmation ownership of estate property, the Plan provided as follows:

**8.5. Title to Assets:** Title to all assets not otherwise dealt with in the Plan and not part of the Asset Pool shall revest in Andrew G. Shank and Barbara N. Shank free and clear of all Claims except as otherwise set forth in the Plan or the Settlement Agreement.

Plan § 8.5.

Debtors contend that the Plan established a trust, with the Creditors' Representative as trustee, such that the Creditors' Representative, pursuant to 26 U.S.C. §§ 6012(a)(4), (b)(4), and 6151(a), is required to file tax returns and pay taxes in connection with the sale of the Asset Pool assets. Such would be a fine result for the Debtors, as the tax attributes that their bankruptcy estates succeeded to pursuant to 26 U.S.C. § 1398(g) were transferred back to them pursuant to § 8.5 of their Plan. It is precisely for this reason that the unsecured claim holders find the Debtors' position so distasteful. Fearful of making a final distribution to the unsecured claim holders without a definitive ruling on the Creditors' Representative's tax liability, the Creditors' Representative, along with certain unsecured claim holders who are eager to receive their distributions, filed the instant motion pursuant to 11 U.S.C. § 505(a).[3]

**III. Law**

The filing of a petition under Chapter 11 creates an estate. *See* 11 U.S.C. § 541(a). In general, the estate is comprised of all legal or equitable interests of the debtor in property as of the commencement of the bankruptcy case. *See id.* Confirmation of a plan of reorganization vests all property of the estate in the debtor, unless the plan or the order confirming the plan provides otherwise. *See id.* § 1141(b). For example, the plan may provide for the transfer of estate property

---

**3.** This section provides, in pertinent part:
(a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.
11 U.S.C. § 505(a)(1).

to an entity organized for the purpose of receiving such property. *See id.* § 1123(a)(5)(B). Once a plan has been confirmed, however, the bankruptcy estate ceases to exist. *See In re W.R.M.J. Johnson Fruit Farm, Inc.,* 107 B.R. 18, 19 (Bankr.W.D.N.Y.1989). "It is clear that upon confirmation of a plan of reorganization, property of the bankruptcy estate vests in the reorganized debtor, a new entity, and administration of the estate ceases." *U.S. v. Redmond,* 36 B.R. 932, 934 (D.Kan.1984).

■ The duty to pay federal income taxes is tied to the duty to make an income tax return. *See Holywell Corporation v. Smith,* 503 U.S. 47, 52, 112 S.Ct. 1021, 1024, 117 L.Ed.2d 196 (1992) (citing 26 U.S.C. § 6151(a), which provides, in part, "[W]hen a return of tax is required ... the person required to make such return shall ... pay such tax...."). Among the persons required to make returns of income are estates, trusts, and estates of individuals under Chapters 7 or 11 of the Bankruptcy Code. *See* 26 U.S.C. § 6012(a)(3),(a)(4), and (a)(9); *see also In re I.J. Knight Realty Corp.,* 501 F.2d 62, 65 (3d Cir.1974) (holding that the phrase "return of income" used in 26 U.S.C. § 6012 is synonymous with the phrase "return of tax" used in 26 U.S.C. § 6151). The "[r]eturns of an estate, trust, or an estate of an individual under chapter 7 or 11 of title 11 of the United States Code shall be made by the fiduciary thereof." 26 U.S.C. § 6012(b)(4).

## IV. Discussion

■ In determining who is required to file tax returns and remit payment for taxes associated with the post-confirmation sale of the Asset Pool assets, the court's task is to determine the nature of the ownership of the assets in the Asset Pool. A determination that the assets are owned by the Debtors would place the tax liability burden on the Shanks. On the other hand, a determination that acknowledged ownership of the assets by a trust would shift the onus of filing returns and paying taxes to the Creditor's Representative as a trustee pursuant to 26 U.S.C. § 6012(b)(4). By reference to the Plan and the law of trusts, the court concludes that the assets in the Asset Pool vested in the Debtors upon confirmation of their plan and that no trust was created upon such confirmation. Consequently, the Creditors Representative is neither obligated to file tax returns in connection with the liquidation of the Asset Pool assets, nor is he obligated to pay taxes arising therefrom.

Debtors contend that their Plan resulted in the creation of a trust, and that under the Supreme Court's holding in *Holywell,* the trustee of such trust is required to file tax returns and pay taxes of the income of such trust pursuant to 26 U.S.C. §§ 6151 and 6012(b)(4). In *Holywell,* the Supreme Court held that a trustee, who was appointed pursuant to a confirmed Chapter 11 plan, was a fiduciary for purposes of 26 U.S.C. § 6012(b)(4), and thus was required to file and pay federal taxes incurred after confirmation of the debtors' plan. *See Holywell,* 503 U.S. at 55, 112 S.Ct. at 1026. Unlike the plan in *Holywell,* for reasons discussed below, the Debtors' Plan did not create a trust. Consequently, *Holywell's* holding does not govern the outcome of this matter.

■ A trust is a fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person, which arises out of a manifestation of an intention to create it. *See* RESTATEMENT (SECOND) OF TRUSTS § 2 (1959). A trust has also been defined as a form of ownership in which the legal title to property is vested in a trustee, who has equitable duties to hold and manage it for the benefit of beneficiaries. *See* AM. JUR. 2D TRUSTS § 1 (1992). Under Maryland law, the creation of an express trust must include the following: (1) property, known as a res, that is owned by the settlor; (2) a settlor who is competent to create a trust; (3) a

person capable of holding the property as trustee; and (4) a beneficiary, the person for whose benefit the res is held. *See Sieling v. Sieling,* 151 Md. 536, 135 A. 376, 382 (1926); *Waesche v. Rizzuto,* 224 Md. 573, 583, 168 A.2d 871 (1961). The creation of an express trust requires an intention on the part of the settlor to create a trust. *See Sieling,* 135 A. at 382. The general requirements for the making of a trust are well settled. No particular formalism is necessary; nor is notification to either the beneficiary or the depositary of the trust res an absolute prerequisite. However, there must be not only an intent to make a trust, but also some "manifestation of intention," i.e., "the external expression of intention as distinguished from undisclosed intention." 1 RESTATEMENT, TRUSTS § 2, COMMENT G (1935), and *see id.* § 4, which requires such manifestation of intention "expressed in a manner which admits of its proof in judicial proceedings."

■ The trustee is an essential element of trust transaction because the trustee is the entity that holds legal title to the res, thereby separating legal estate of the res from the equitable estate. As explained by the Court of Appeals of Maryland,

> [T]o establish an express trust it is essential that the legal title be transferred to the trustee, for, . . . the mere delivery of personal property by the owner to another to hold for him without any intention on the part of the owner to divest himself of the legal title thereto cannot possibly create a trust, but is a mere bailment; for manifestly the same person cannot at the same time possess as trustee the entire legal title, and as cestui que trust the entire equitable title.

*McIntyre v. Smith,* 154 Md. 660, 670–71, 141 A. 405, 410 (1928) (sustaining demurrer on ground that party alleging trust did not allege that owner "intended to, or did, divest himself of legal title" to property); *see also Volunteer State Oil Co. v. Adkisson (In re Adkisson),* 26 B.R. 879, 882 (Bankr.E.D.Tenn.1983).

Whether the legal owner of property is a trustee is derivative from the question of whether a trust has been created. The Court of Appeals of Maryland has explained this distinction as follows:

> The legal owner of property is prima facie entitled to its beneficial enjoyment, and, in order to convert him into a trustee, there must be a sufficient indication of the intention of the parties that he should hold the estate fore the benefit of others. To effect this conversion, there must be a proper declaration of the trust, for it is not the legal conveyance, or the transfer of the property, *but the declaration of the trust,* that operates in the creation of the trustee.

*Sieling,* 135 A. at 380 (quoting *Doan v. Vestry of Parish of Ascension of Carroll County,* 103 Md. 662, 64 A. 314 (1906)) (internal quotation marks omitted) (emphasis added).

■ While a settlor may be the trustee or the beneficiary of a trust, the settlor may not simultaneously be both the sole trustee and the sole beneficiary of a trust. *See McIntyre,* 154 Md. at 671, 141 A. at 410; *Sieling,* 135 A. at 381. Where the settlor creates a trust in his own property by designating himself as trustee, creation of a valid trust is conditioned on a court's finding a "clear and unequivocal" intent on the part of the settlor to create a trust. *See Sieling,* 135 A. at 381–82. The burden of proving the existence of a trust rests on the person asserting it. *See id.*

Applying these principles to the Debtors' Plan, it is evident that the Plan did not create a trust because the Plan does not sufficiently evince an intent to create a trust. The Plan provided that title to the assets in the bankruptcy estate would vest in the Shanks upon confirmation, although certain of such assets would not vest free and clear. *See* Plan §§ 8.5 (providing that title to the Asset Pool assets would not vest in the Shanks free and clear of claims); § 5.4(a) (providing that the Debt-

ors in possession would grant a security interest in favor of the unsecured creditors). Moreover, no provision in the Plan provided for a transfer of the legal interest in the Asset Pool assets to the Creditor's Representative. To the contrary, the Shanks were to retain the legal title of the Asset Pool assets and promised to assign such interest at the Creditors' Representatives' direction. *See* Plan § 9.2(f). Consequently, the Plan did not create a trust in which the Creditors' Representative was the trustee.

Debtors argue that the Creditors' Representative's wide ranging power over the Asset Pool assets requires the court to find that a trust was created with the Creditors' Representative as its trustee. This is a fallacious argument, akin to arguing that because all dogs have four legs, all four legged entities must be dogs. The fact that the Creditors' Representative had extensive obligations under the Plan is also consistent with the proposition that the Creditors' Representative was the collection agent of the unsecured claim holders, charged with the task of collecting the debt that the Plan created. As stated above, the existence of a trustee is derivative from the finding that there has been a proper declaration of a trust. *See Sieling*, 135 A. at 380. While the Creditors' Representative may have had some of the characteristics of a trustee, he certainly lacked the most prominent: that of holding legal title to the property. There is no provision in the Plan that conveyed legal title from the estate or the Debtors to the Creditors' Representative.

Title to assets that were not part of the Asset Pool, or not otherwise dealt with in the Plan, revested in Debtors free and clear of all claims pursuant to § 8.5 of the Plan. As to assets in the Asset Pool, Debtors were required by the Plan to grant the holders of Allowed Unsecured Claims a security interest for repayment of their claims. Plan, §§ 5.4(a), 9.2(f). Since there is no contrary provision in the Plan, the Asset Pool property vested in Debtors by operation of the Bankruptcy Code, albeit subject to the security interest rights of the holders of Allowed Unsecured Claims. 11 U.S.C. § 1141(b). Because properties in the Asset Pool would vest in Debtors after the Plan was confirmed, a needed provision was included in the Plan that required Debtors to "[c]onvey the deeds to the real properties in the Asset Pool as directed by the Creditors' Representative." Plan, § 9.2(b).

■ Because legal title to the Asset Pool assets vested in the Shanks upon confirmation, there remains the question whether the Plan indicates a clear and unequivocal intent on the part of the Debtors in possession to create a trust of which the Shanks were trustees. If such were the case, then the Shanks would have a claim against the trust res for reimbursement of the taxes levied upon them as legal owners of the trust res. *See* AM. JUR. 2D TRUSTS § 633 (1997). No such intent is evident from the Plan. While it is true that no technical words are required for the creation of a trust, *see Sieling*, 135 A. at 382, the Plan is utterly devoid of any intention on the part of the Debtors in possession to create a fiduciary relationship between the Shanks and the unsecured claim holders. The Shanks' duties under the Plan were perfunctory and colorless—akin to the contractual obligations incident to a contract to convey residential rental property. See, e.g., Plan §§ 9.2(b) (obligation to convey deeds); 9.2(e) (obligation to assist Creditors' Representative in dealing with existing tenants). A contract to convey property is not a trust. *See* RESTATEMENT (SECOND) OF TRUSTS § 13. Because the court does not find expressed in the Plan a clear and unequivocal intent on the part of the Debtors to hold the Asset Pool assets as trustees for the benefit of the unsecured claim holders, the court concludes that no trust resulted from confirmation of Debtors' Plan.

■ Debtors' reliance on 28 U.S.C. § 960[4] in support of their argument that the Creditors' Representative is liable for the taxes incurred in connection with the liquidation of the Asset Pool assets is misplaced. Section § 960 does not, by its own terms, serve as an independent basis for tax liability. *See California State Board of Equalization v. Sierra Summit, Inc.,* 490 U.S. 844, 851, 109 S.Ct. 2228, 2234, 104 L.Ed.2d 910 (1989) ("Read most naturally, [28 U.S.C. § 960] evinces an intention that a State be permitted to tax a bankruptcy estate notwithstanding any intergovernmental immunity objection that might be interposed...."). The court has already found that the Creditors' Representative is not a trustee. Consequently, there is no basis for the Creditors' Representative's tax liability in connection with the liquidation of the Asset Pool assets under Debtors' Plan under 26 U.S.C. §§ 6012 and 6151.

■ Debtors also argue that they are not obligated to file tax returns and pay taxes in connection with the liquidation of the Asset Pool assets because the court order that confirmed their Plan provided that Debtors were discharged from all claims described by 11 U.S.C. § 502(i). The portion of the order to which Debtors refer provided as follows:

> ORDERED, except as otherwise provided in the Joint Amended Plan, the Debtor is discharged from ... any debt of any kind specified in 11 U.S.C. § 502(g), (h), or (i).

Order Finally Approving Disclosure Statement and Confirming Plan. Section 502(i) refers to claims "that d[o] not arise until after the commencement of the case for a tax entitled to priority under section 507(a)(8)...." 11 U.S.C. § 502(i). Section 507(a)(8)(A)(iii) provides eighth priority to taxes measured on income or gross receipts "not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case...." 11 U.S.C. § 507(a)(8)(A)(iii). Since the taxes at issue here arose after the commencement of Debtors' case and are of the type described in 11 U.S.C. § 507(a)(8)(A)(iii), Debtors maintain they are relieved of all such taxes that might otherwise arise.

Debtors' argument proves too much, however, because it would imply that the Debtors are forever free from the obligation to file income tax returns and to pay taxes that arise after the commencement of their case. The court shudders to think of the increase in filings that would result if it were to hold that the debtor's fresh start encompasses prospective tax immunity. *See* 4 COLLIER ON BANKRUPTCY ¶ 507.10[2][c][i] (15th ed.1999) (noting that courts have rejected the literal reading of § 507(a)(8)(A)(iii) because it would produce an absurd result). The quoted provision from the confirmation order and § 502(i) are limited to taxes for which Debtors had become liable before confirmation of their plan. The only taxes for which the Bankruptcy Code provides forgiveness post-confirmation are transfer taxes for real property transferred pursuant to a confirmed plan of reorganization. 11 U.S.C. § 1146(c). See *Case of Eastmet Corp.,* 907 F.2d 1487 (4th Cir.1990); *In re NVR Homes,* 1999 WL 486614 (4th Cir. July 12, 1999).

■ When construing statutory provisions, courts must presume that Congress acted intentionally and purposefully when it includes particular language in one section of a statute and excludes other language that it was capable of incorporating. See *BFP v. Resolution Trust Corp.,* 511 U.S. 531, 537, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) (" '[I]t is generally

---

**4.** This section provides as follows:

Any officers and agents conducting any business under authority of a United States court shall be subject to all Federal, State and local taxes applicable to such business to the same extent as if it were conducted by an individual or corporation.

28 U.S.C. § 960.

presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another'. . . ."). When, as now, a law itself contains an enumeration of applicable exemptions, the maxim "expressio unius est exclusio alterius" ordinarily applies. Under that maxim, a legislature's affirmative description of certain powers or exemptions implies denial of nondescribed powers or exemptions. See *Continental Cas. Co. v. United States*, 314 U.S. 527, 533, 62 S.Ct. 393, 86 L.Ed. 426 (1942). Therefore, this court will not extend the scope of § 507(a)(8)(A)(iii) to exempt the post-petition taxes at issue here.

## V. Conclusion

In summary, the court finds that Debtors' Plan resulted in the vesting of Asset Pool assets in the Debtors and that Debtors did not accept such assets as trustees of the allowed, unsecured claim holders. Further, Debtors' Plan did not create a trust of which the Creditors' Representative was the trustee. Upon confirmation, Debtors held both the legal and equitable interest in the Asset Pool assets. Consequently, pursuant to 26 U.S.C. §§ 6012(a)(1) and 6151(a), Debtors are liable for the taxes incurred in connection with the sale of the Asset Pool assets.

Therefore, it is, this 30th day of September, 1999, by the United States Bankruptcy Court for the District of Maryland,

ORDERED and DECLARED, that Debtors are required to make a return of income pursuant to 26 U.S.C. § 6012(a)(1); and it is further

ORDERED and DECLARED, that Debtors are required to pay the taxes incurred in connection with the disposition of assets comprising the Asset Pool pursuant to 26 U.S.C. § 6151(a); and it is further

ORDERED and DECLARED, that the Creditors' Representative is not obligated to file federal income tax returns in con-

nection with the sale of the assets comprising the Asset Pool; and it is further

ORDERED and DECLARED, that the Creditor's Representative is not liable for payment of taxes incurred in connection with the disposition of the assets comprising the Asset Pool; and it is further

ORDERED, that the Internal Revenue Services' Motion to Dismiss Joint Motion to Determine Tax Liability is denied, without prejudice, as moot.