**In re Frederick W. MUELLER,
Patricia N. Mueller,
Debtors.**

No. 96–5–8962–JS.

United States Bankruptcy Court,
D. Maryland.

Nov. 7, 2000.

446

Maria Ellena Chavez–Ruark, Piper, Marbury, Rudnick & Wolfe, LLP, Baltimore, for Mark J. Friedman, Chapter 7 Trustee.

Christopher C. Tsien, Columbia, for the Debtors.

## MEMORANDUM OPINION OVERRULING TRUSTEE'S OBJECTION TO DEBTORS' AMENDED CLAIM OF EXEMPTIONS

JAMES F. SCHNEIDER, Bankruptcy Judge.

The Chapter 7 trustee objected to the debtors' exemption of a deferred compensation plan. This opinion holds that The Maryland State Employees Deferred Compensation Plan and Trust (the "Plan") is a pension plan that is both excludable from the debtors' bankruptcy estate pursuant to Section 541(c)(2) [1] of the Bankruptcy Code and that even if it is includable in the estate pursuant to 11 U.S.C. § 541(a), [2] it is

1. 11 U.S.C. § 541(c)(2) provides:

(c)(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section not withstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—

(A) that restricts or conditions transfer of such interest by the debtor; or

(B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

(2) a restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

11 U.S.C. § 541(c)(2) (2000).

2. 11 U.S.C. § 541(a) provides:

(a) The commencement of a case under section 301, 302 or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

(2) All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is—

(A) under the sole, equal, or joint management and control of the debtor; or

(B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such that such interest is so liable.

(3) Any interest in property that the trustee recovers under section 329(b), 363(n), 543, 550, 553, or 723 of this title.

exemptible from the estate pursuant to the law of the State of Maryland.. Accordingly, the objection will be overruled, for the following reasons.

On September 17, 1996, the debtors, Frederick W. Mueller, 67, and Patricia N. Mueller, 57, filed the instant voluntary, joint Chapter 7 bankruptcy petition. Mrs. Mueller had been employed by the Montgomery County Department of Health and Human Resources as a social worker for 30 years, earning a salary of approximately $50,000 per year for 1994 and 1995, and $25,000 during the then-current year of 1996, in addition to $75 per week from a private psychotherapy practice. The debtors owned a residence as tenants by the entireties valued at $182,000, in which there was minimal equity. They listed approximately $82,000 owed as unsecured debt. They claimed as exempt Mrs. Mueller's "Retirement Account (PEBSCO),"[3] a deferred compensation plan administered by the Board of Trustees of the State Retirement and Pension System,[4] in the

(4) Any interest in property preserved for the benefit of or ordered transferred to the estate under section 510(c) or 551 of this title.

(5) Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—

(A) by bequest, device, or inheritance;

(B) as a result of a property settlement agreement with debtor's spouse, or of an interlocutory or final divorce decree; or

(C) as beneficiary of a life insurance policy or of a death benefit plan.

(6) Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.

(7) Any interest in property that the estate acquires after the commencement of the case.

11 U.S.C. § 541(a) (2000).

3. Public Employees Benefit Services Corporation.

4. The Plan was entitled "The Maryland State Employees Deferred Compensation Plan and Trust," and an attached resolution of the Board of Trustees of the Maryland Teachers and State Employees Supplemental Retirement Plans indicated that the Plan is a newly-revised and amended plan and trust established under § 457 of the Internal Revenue Code. Resolution dated August 25, 1997. The current Plan constituted "an amendment and restatement" effective October 1, 1997 of an earlier plan that the Board adopted on December 8, 1988. Plan, § 7.05.

The preamble to the Plan stated that it "is intended to operate as a § 457 Plan for State employees as permitted by I.R.C. § 457 and State Pers. & Pens. Art. 35–601 [of the Annotated Code of Maryland]," is applicable to "each public employee who elects to partici-pate in the Plan," and "is effective as to each such public employee upon the date he becomes a 'PARTICIPANT' by signing and filing a 'Participation Agreement.' " *Id.* The Board of Trustees holds the Plan funds "as a separate and distinct fund, in trust, for the exclusive benefit of PARTICIPANTS and their BENEFICIARIES." *Id.*

Article II of the Plan provided that participating employees consent to deductions by the State from the participant's gross compensation for each pay period in an amount specified in the Participation Agreement. Maximum amounts that can be deferred in any year are limited to the lesser of $7,500 or 33½% of the employee's gross income for that year. Plan, § 2.02.

Article III of the Plan, entitled "Declaration of Trust," provided that each participating employee has a account and that each such account and the whole fund of which it is a part are maintained by the Board of Trustees "in trust for the exclusive benefit of PARTICIPANTS and their BENEFICIARIES, under the requirements of I.R.C. § 457(g) and State Pers. & Pens. Art. 35–301." Plan, § 3.01. "The Trustees are fiduciaries subject to the responsibilities and requirements of State Pers. & Pens. Art. 21–201 et seq." Plan, § 3.05.

Article IV, entitled "Benefits—Payment of Account Balance," provided that the funds held in the participating employee's account shall be paid "upon the Participant's death, retirement, separation from service, the occurrence of an unforeseen emergency causing financial hardship, or the attainment by the PARTICIPANT of age 70½, whichever shall first occur." Plan, § 4.01. The earliest dates upon which the payments may commence are the employee's death, separation from service, "unforeseen emergency causing financial hardship," or attainment of the age of 70½, even if the participant is still employed. Plan, § 4.01(a).

The Plan provided that "[t]he Law of the State of Maryland shall apply in determining

full amount of $90,618.90, in addition to the equity in their residence, Schedule C.

Mark J. Friedman, the Chapter 7 trustee, objected to the exemption on the ground that Maryland Annotated Code Article 73B Sections 17 and 125[5] had been repealed.

However, the trustee's argument was without merit. While former Article 73B entitled "Pensions" was indeed repealed in 1994, the Maryland General Assembly had enacted a new article of the Maryland Annotated Code one year earlier entitled "State Personnel and Pensions" that reenacted many if not most of the provisions of the former law, gathering pension and personnel-related matters under one comprehensive article.[6] Currently, Section 21–502 of the State Personnel and Pensions Article contains all of the provisions included under former Sections 17 and 125 of Article 73B.[7]

the construction and validity of this Plan and its associated trust," and contained the following restraints on creditors and the ability of a participant and or beneficiary from assigning plan assets:

The rights of the PARTICIPANT or the BENEFICIARY under this Plan shall not be subject to the rights of creditors of the PARTICIPANT or any BENEFICIARY, and shall be exempt from execution, attachment, prior assignment, or any other [J]udicial relief or order for the benefit of creditors or other third persons.

It is agreed that neither the PARTICIPANT nor his BENEFICIARY nor any other designee shall have any right to commute, sell, assign, transfer, or otherwise convey the right to receive any payments hereunder, which payments and right thereto are expressly declared to be nonassignable and nontransferable.

Plan, §§ 5.10, 5.11.

5. Section 17 of Article 73B provided, as follows:

§ 17. Exemption for execution; wrongful payments.

(a) *"Court" defined.*—In this section "court" means any court of any state or the District of Columbia.

(b) *Applicability of section.*—The provisions of this section shall only apply to payments made after the date of receipt of written notice of the decree or order by the board of trustees, and of any additional information and documentation that the board of trustees may prescribe.

(c) *Execution, garnishment or attachment; assignments.*—The right of a person to a pension, an annuity or a retirement allowance, to the return of contributions the pension, annuity or retirement allowance itself, any optional benefit or death benefit, or any other right accrued or accruing to any person under the provisions of this article, and the moneys in the various funds created by this article, shall not be subject to execution, garnishment, attachment, or any other process whatsoever,

and shall be assignable only if and to the extent that the assignment is expressly provided for in, or done incident to, a court decree or order of divorce, alimony, child support, or a court-approved property settlement incident to a court decree or order.

(d) *Liability for wrongful payments.*—The board of trustees is not liable for any payment made to a wrongful beneficiary if that payment results from a failure to receive by the board of trustees written notice of the court decree or order. (Ann.Code 1951, § 14; 1941, ch. 377, § 11; 1984, ch. 633; Repealed, Sec. 1, ch. 6, Acts 1994).

MD. ANN. CODE art. 73B, § 17 (Ann.Code 1951, § 14; 1941, ch. 377, § 11; 1984, ch. 633; Repealed, Sec. 1, ch. 6, Acts 1994). Section 125 of Article 73B contained provisions identical to those of Section 17.

6. Ch. 10, Acts 1993. Section 18 of ch. 10 provided that "that this Act shall take effect October 1, 1993."

7. Section 21–502 provides:

(a) *In general.*—(1) Except as provided in paragraph (2) of this subsection, a person may not attach, execute, garnish, or otherwise seize any current or future benefit under this Division II or any money in a fund created under this Division II.

(2) A court of competent jurisdiction may expressly order that a benefit under this Division II be assigned in a decree or order of alimony, child support, or divorce, or in a court-approved property settlement incident to a court decree or order.

(b) *Notice to Board of Trustees.*—An assignment under this section only applies to benefits paid after the Board of Trustees receives:

(1) written notice of the court decree or order; and

(2) any additional information that the Board of Trustees requires.

(c) *Limitation on Board's liability.*—The Board of Trustees is not liable for an im-

**450**

Nevertheless, the debtors amended Schedules B and C a third time.[8] In Amended Schedule C, the debtors characterized the Plan as a deferred compensation plan and claimed an exemption in the amount of $68,000, pursuant to MD. CODE ANN., CTS. AND JUD. PROC. § 15–601.1 [9], and in the amount of $5,000 pursuant to MD. CODE ANN., CTS. AND JUD. PROC. § 11–504(f) [10]. On Amended Schedule B, they added:

1. The debtors contend that the deferred compensation is not property of the bankruptcy estate under 11 U.S.C. Sec. 541(c)(2), *Patterson v. Shumate* [, 504 U.S. 753, 758, 112 S.Ct. 2242, 2246, 119 L.Ed.2d 519 (1992) ].[11]

2. If the deferred compensation is property of the bankruptcy estate, then the debtors claim the property as exempt as wages payable.

Amended Schedules B and C [P.26]. Mrs. Mueller also claimed to be the beneficiary of a tax-exempt "rabbi trust." [12]

---

proper payment to a person because the Board of Trustees did not receive written notice of a court decree or order.

Md.Code Ann., State Pers. and Pens., § 21–502 (1997).

8. On May 23, 1997, the debtors had amended their Schedules B and C by deleting the Plan from the list of exemptions. By order [P. 24] entered June 16, 1997, the amended schedules were stricken as procedurally deficient because the debtors had failed to file a certificate of service. By order [P. 25] entered July 1, 1997, the trustee's objection to the exemption of the Plan was sustained.

9. The trustee pointed out in his objection that no such statute exists. Counsel probably meant to cite MD. CODE ANN., COM. LAW § 15–601.1, which provides:

**§ 15–601.1. Exemption from attachment.**

(a) *Disposable wages.*—In this section "disposable wages" means the part of wages that remain after deduction of any amount required to be withheld by law;

(b) *Amount of wages exempt; medical insurance payments.*—The following are exempt from attachment:

(1) Except as provided in Item 2 of this subsection, the greater of:

(i) The product of $145 multiplied by the number of weeks in which the wages due were earned; or

(ii) 75 percent of the disposable wages due;

(2) In Caroline, Kent, Queen Anne's and Worcester counties, for each work week, the greater of:

(i) 75 percent of the disposable wages due;

(ii) 30 times the federal minimum hourly wages under the Fair Labor Standards Act in effect at the time the wages are due; and

(3) any medical insurance payment deducted from an employee's wages by the employer.

(c) *Calculation per pay period.*—The amount subject to attachment shall be calculated per pay period.

MD. CODE ANN., COM. LAW § 15–601.1 (1988).

10. The Annotated Code of Maryland, Courts and Judicial Proceedings § 11–504(f) provides:

(f) *Interest in real or personal property.*— In addition to the exemptions provided in subsection (b) of this section, and in other statutes of this State, in any proceeding under Title 11 of the United States Code, entitled "Bankruptcy", any individual debtor domiciled in this State may exempt the debtor's aggregate interest, not to exceed $2,500 in value, in real property or personal property.

MD. CODE ANN., CTS. & JUD. PROC. § 11–504(f).

11. Because *Patterson* held that pursuant to 11 U.S.C. § 541(c)(2), a debtor's interest in an ERISA-qualified plan is excludable from a debtor's bankruptcy estate, it never becomes property of the estate under 11 U.S.C. § 541(a). "The drafters of the official forms, however, did not provide any place to list property of the debtor that was excluded from property of the estate. For that reason, it is common for debtors to assert the ERISA exclusion on the Schedule of Property Claimed Exempt, since there is no other convenient place on the schedules to do so." *In re Cathcart*, 203 B.R. 599, 601 n. 1 (Bankr.E.D.Va. 1996).

12. The term "rabbi trust" is based upon the type of trust that the Internal Revenue Service approved as tax-free in a private letter ruling in 1980 that was established by the congregation of a synagogue to benefit its rabbi. The terms of that trust provided that the congregation would fund the trust and trustees would "manage, invest, and reinvest the trust assets, and pay the net income derived there-

The trustee objected again, contending that Mrs. Mueller's claim as beneficiary of the Plan was property of the estate, even though ownership of the Plan was titled in the State. The trustee also objected to the serial exemption of the same property using alternative theories.

■■■ The Court holds that in the absence of fraud or bad faith, the debtors are entitled to amend their schedules, including their list of exemptions. Fed. R.Bankr.P. 1009(a). The rule is permissive, with amendment disallowed in limited instances of bad faith by the debtor or where there is prejudice to creditors. *In re Butcher*, 189 B.R. 357, 374 (Bankr. D.Md.1995), *citing In re Yonikus*, 996 F.2d 866, 871–72 (7th Cir.1993) (Fraudulent concealment of asset led to court's disallowance of amendment of exemption to include concealed asset as exemption); *Calder v. Job (In re Calder)*, 973 F.2d 862, 867 (10th Cir.1992); *Tignor v. Parkinson (In re Tignor)*, 729 F.2d 977, 978–79 (4th Cir.1984) (Decided under predecessor rule, but recognizing that Bankruptcy Rule 1009 takes the same approach).

*EXEMPTIONS* [13]

The filing of a bankruptcy petition creates an estate comprised of all of the debtor's legal and beneficial interests in property. *In re Miller*, 224 B.R. 913, 916 (Bankr.D.N.D.1998), citing 11 U.S.C.

§ 541(a). The debtor may claim certain property of the bankruptcy estate as exempt in order to obtain a "fresh start." While it is a correct statement that "[b]efore an exemption can be claimed in property, the property must first be estate property." *Miller*, 224 B.R. at 917, citing *In re Yonikus*, 996 F.2d 866, 869 (7th Cir.1993). Therefore, for purposes of ruling on this self-styled "objection to exemption," this Court will assume that the pension plan in question is property of the estate.

■■ Because Maryland has "opted out" of the Federal exemption scheme, debtors who file bankruptcy petitions in Maryland may only claim exemptions afforded them under State law. 11 U.S.C. § 522(b)(1) (2000); Md.Code Ann., Cts. and Jud. Proc. § 11–504(g) (2000). *In re Fishbein*, 245 B.R. 36 (Bankr.D.Md.2000). Exemptions in Maryland are liberally construed. *Butcher*, 189 B.R. at 369, *citing In re Taylor*, 312 Md. 58, 71 n. 5, 537 A.2d 1179 (1988).

■■■ To be exempt from the claims of creditors in bankruptcy, the asset must be exempt from the claims of creditors outside of bankruptcy. *In re Jones*, 142 B.R. 950, 951 (Bankr.W.D.Wash.1992). However, a legal prohibition against the debtor's ability to reach the asset is not a prerequisite for her right to claim the asset as exempt.[14]

from to the rabbi at least quarter annually." The rabbi would be entitled to distributions of principal and income upon his "death, disability, retirement or termination of employment." The assets would be subject to claims of the congregation's creditors "as if the assets were the general assets of [the congregation.]" Whatever interest the rabbi possessed in the trust was "not subject to the assignment, alienation, pledge, attachment, or claims of creditors" of the rabbi, nor could the trust assets be alienated or encumbered by him. The funding of the trust was not a taxable event for the rabbi because "the assets of the trust [were] subject to the claims of [the congregation's] creditors and were not paid or made available [to the rabbi] within the meaning of Section 451 of the [Internal Revenue] Code." Upon the rabbi's actual receipt of

the payment of trust income and principal, or the fund otherwise becoming available to him, the amount received would then become taxable to the rabbi as includable in his gross income in that tax year. PLR 8113107, 1980 WL 137740 (December 31, 1980).

**13.** *See Employee Retirement Pension Benefits as Exempt from Garnishment, Attachment, Levy, Execution, or Similar Proceedings,* 93 A.L.R.3d 711, 1979 WL 52396 (1979).

**14.** *See dicta* in *Patterson,* 504 U.S. at 762–63, 112 S.Ct. at 2248–49, 119 L.Ed.2d at 530 (1992):

Petitioner's surplusage argument fails, however, for the reason that § 522(d)(10)(E) [the Federal exemption

■ The State exemptions from execution made applicable to proceedings in bankruptcy are located in Md.Code Ann., Cts. & Jud. Proc. § 11–504(b), (f) and (h).[15]

statute relating to pension and other plans] exempts from the bankruptcy estate a much broader category of interests than § 541(c)(2) excludes. For example, pension plans established by governmental entities and churches need not comply with Subchapter I of ERISA, including the antialienation requirement of § 206(d)(1). See 29 U.S.C. §§ 1003(b)(1) and (2); 26 CFR § 1.401(a)–13(a) (1991). So, too, pension plans that qualify for preferential tax treatment under 26 U.S.C. § 408 (individual retirement accounts) are specifically excepted from ERISA's antialienation requirement. See 29 U.S.C. § 1051(6). Although a debtor's interest in these plans could not be excluded under § 541(c)(2) because the plans lack transfer restrictions enforceable under "applicable nonbankruptcy law," that interest nevertheless could be exempted under § 522(d)(10)(E). Once petitioner concedes that § 522(d)(10)(E)'s exemption applies to more than ERISA-qualified plans containing antialienation provisions..., his argument that our reading of § 541(c)(2) renders the exemption provision superfluous must collapse.

*Id.*

**15. 11–504 Exemptions from execution.**

(b) *In general.*—The following items are exempt from execution on a judgment:

(1) Wearing apparel, books, tools, instruments, or appliances, in an amount not to exceed $2,500 in value necessary for the practice of any trade or profession except those kept for sale, lease, or barter.

(2) Money payable in the event of sickness, accident, injury, or death of any person, including compensation for loss of future earnings. This exemption includes but is not limited to money payable on account of judgments, arbitrations, compromises, insurance, benefits, compensation, and relief. Disability income benefits are not exempt if the judgment is for necessities contracted for after the disability is incurred.

(3) Professionally prescribed health aids for the debtor or any dependent of the debtor.

(4) The debtor's interest, not to exceed $500 in value, in household furnishings, household goods, wearing apparel, appliances, books, animals kept as pets, and other items that are held primarily for the personal, family, or household use of the debtor or any dependent of the debtor.

(5) Cash or property of any kind equivalent in value to $3,000 is exempt, if within 30 days from the date of the attachment or the levy by the sheriff, the debtor elects to exempt cash or selected items of property in an amount not to exceed a cumulative value of $3,000.

\* \* \* \* \* \*

(f) Interest in real or personal property.—In addition to the exemptions provided in subsection (b) of this section, and in other statutes of this State, in any proceeding under Title 11 of the United States Code, entitled "Bankruptcy", any individual debtor domiciled in this State may exempt the debtor's aggregate interest, not to exceed $2,500 in value, in real property or personal property.

\* \* \* \* \* \*

(h) Interest in retirement plan.—(1) In addition to the exemptions provided in subsections (b) and (f) of this section and any other provisions of law, any money or other assets payable to a participant or beneficiary from, or any interest of any participant or beneficiary in, a retirement plan qualified under § 401(a), § 403(a), § 403(b), § 408, § 408A, § 414(d), or § 414(e) of the United States Internal Revenue Code of 1986, as amended, or § 409 (as in effect prior to January 1984) of the United States Internal Revenue Code of 1954, as amended, shall be exempt from any and all claims of the creditors of the beneficiary or participant, other than claims by the Department of Health and Mental Hygiene.

(2) Paragraph (1) of this subsection does not apply to:

(i) An alternate payee under a qualified domestic relations order, as defined in § 414(p) of the United States Internal Revenue Code of 1986, as amended;

(ii) A retirement plan, qualified under § 401(a) of the United States Internal Revenue Code of 1986, as amended, as a creditor of an individual retirement account qualified under § 408 of the United States Internal Revenue Code of 1986, as amended; or

(iii) The assets of a bankruptcy case filed before January 1, 1988.

(3) The interest of an alternate payee in a plan described in subsection (h)(1) of this section shall be exempt from any and all claims of any creditor of the alternate payee, except claims by the Department of Health and Mental Hygiene.

(4) If a contribution to a retirement plan described under paragraph (1) of this subsection exceeds the amount deductible or, in the case of contribution under § 408A of the Internal Revenue Code, the maximum contribution allowed under the applicable provisions of the United States Internal

Section 414(d) of the Internal Revenue Code, which is cited in Md. Cts., & Jud. Proc.Code § 11–504(h), refers to governmental plans.[16] The Plan at issue in the instant case is a governmental plan, made exempt from execution and from bankruptcy by the Maryland exemption statute. *See Solomon v. Cosby (In re Solomon)*, 67 F.3d 1128, 1132–33 (4th Cir.1995) (The debtor's IRAs would be exempt assets unavailable to creditors in a Chapter 7 liquidation, pursuant to Md. Cts. & Jud. Proc. Code Ann. § 11–504(h), which provides that "any money or other assets payable to a participant or beneficiary from, or any interest of any participant or beneficiary in, a retirement plan qualified under § 408 ... of the United States Internal Revenue Code ... shall be exempt from any and all claims of the creditors of the beneficiary or participant....").

In *U.S. v. Williams*, 279 Md. 673, 370 A.2d 1134 (1977), the Court of Appeals of Maryland commented that former Section 17 of Article 73B, the predecessor statute of Section 21–502, was an exemption statute that "relates exclusively to pensions paid by the State and its subdivisions," and that they are thereby "exempt from execution." 279 Md. at 678, 370 A.2d at 1137. *Cf. Lomax v. Comptroller*, 323 Md. 419, 593 A.2d 1099 (1991), where the Court of Appeals dealt with an almost identical statute to the one at issue here and held that it "protect[ed] teachers' retirement pension benefits from garnishment by private creditors," but did not protect pension benefits from the State for unpaid State income taxes. 323 Md. at 424, 593 A.2d at 1101. This Court finds that the current statute likewise exempts the subject State retirement plan from execution by private creditors, thereby rendering the Plan exempt from the reach of the Chapter 7 trustee, who acts on their behalf.

It is to be noted that the trustee's objection was based solely upon the lack of proper grounds stated for the debtors to exempt this retirement Plan, and not upon any claim that the amount exempted was not reasonably necessary for the debtors' maintenance and support. Accordingly, that is not an issue before this Court, although the record reflects that for all practical purposes Mr. Mueller was retired when the petition was filed and that Mrs. Mueller was approaching retirement age. Therefore, having found that the Plan in this case was properly exempted pursuant to various statutes found in the Maryland Code, the trustee's objection will be overruled.

■ The Plan is not exemptible as "wages payable." By its own definition, Section 15–601.1 of the Maryland Commercial Law Article does not apply to monies deducted from Mrs. Mueller's wages as employee contributions to her deferred compensation plan. The definition of "disposable wages" contained in the statute refers to "the part of wages that remain after deduction of any amount required to be withheld by law." Md.Code Ann., Com. Law II, § 15–601.1 (1988). The wages that were deducted for her plan were "required to be withheld by law" and there-

---

Revenue Code of 1986, as amended, the portion of that contribution that exceeds the amount deductible or, in the case of contribution under § 408A of the Internal Revenue Code, the maximum contribution allowed, and any accrued earnings on such a portion, are not exempt under paragraph (1) of this subsection.

*Id.*

16. Section 414(d) provides as follows:

(d) Governmental plan.—For purposes of this part, the term "governmental plan" means a plan established and maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing. The term "governmental plan" also includes any plan to which the Railroad Retirement Act of 1935 or 1937 applies and which is financed by contributions required under that Act and any plan of an international organization which is exempt from taxation by reason of the International Organizations Immunities Act (59 Stat. 669).

26 U.S.C. § 414(d).

454

fore were not exempt from attachment as "disposable wages." Section 11–504(e) of the Courts and Judicial Proceedings Article of the Maryland Code expressly excepts "wage attachments" from the scope of exemptions therein enumerated. It has been held that State exemptions for "wages payable" do not extend to a debtor's monetary contribution of wages to a retirement plan. *See for example, In re Wheat,* 149 B.R. 1003, 1008 (Bankr. S.D.Fla.1992).

In addition. In the case of *U.S. v. Williams,* 279 Md. 673, 370 A.2d 1134 (1977), the Court of Appeals of Maryland held that while military retirement pay, when actually received, constituted wages for purposes of attachment under Section 15–602 of Commercial Law Article of the Maryland Code, "wages not actually due when the attachment is laid are not subject to attachment, primarily because the employee's right to sue the garnishee has not matured," *citing Cole v. Randall Park Holding Co.,* 201 Md. 616, 95 A.2d 273 (1953), and Comment, *Attachment of Wages in Maryland,* 16 MD. L. REV. 227, 231–32 (1956).

### EXCLUSIONS FROM PROPERTY OF THE ESTATE [17]

"Section 541(c)(2) of the Bankruptcy Code provides that beneficial interests of the debtor are excluded from the bankruptcy estate if they are subject to a transfer restriction that is enforceable under 'applicable nonbankruptcy law.'" JACOB MERTENS *Law of Federal Income Taxation,* § 25B–212.50; 11 U.S.C. § 541(c)(2).

Congress enacted ERISA in 1974 "to preserve and protect pension benefits for the retirement security of American workers." Jeanne Cullinan Ray, *Protecting Pension Assets in Personal Bankruptcy,* 68 ST. JOHN'S L. REV. 409, (1994). In *Patterson,* 504 U.S. at 758, 112 S.Ct. at 2246, 119 L.Ed.2d 519 (1992), the Supreme Court held that a debtor's interest in a profit-sharing and pension plan that qualified under the provisions of ERISA was excludable from property of the debtor's bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2) because the Court interpreted the section broadly to include ERISA, a Federal statute, as being "applicable nonbankruptcy law." 504 U.S. at 758, 112 S.Ct. at 2246, 119 L.Ed.2d at 527.[18] Since *Patterson* was decided, a number of courts have wrestled with the meaning of the undefined phrase "ERISA-qualified,"[19] some noting the difference between ERISA-qualified savings-account type plans and ERISA-qualified retirement plans, reaching different results. There is also great disagreement in the case law regarding the standards for excluding/exempting ERISA-qualified and non-ERISA-qualified deferred compensation plans from property of the bankruptcy estate.[20] *See Warning: Qualified Plans May Not*

17. *See* Robert A. Johnson, *Bankruptcy—In re Moore: Moore Confusion on Excluding ERISA Pension Plans from the Bankruptcy Estate by Code Section 541(c)(2),* 16 J. CORP. L. 575 (1991).

18. This result was presaged by the Fourth Circuit in the case of *Anderson v. Raine (In re Moore),* 907 F.2d 1476 (4th Cir.1990), which held that a debtor's interests in an ERISA-qualified profit-sharing and pension plan were excluded from the bankruptcy estate. In *Patterson,* the Supreme Court affirmed the Fourth Circuit's decision in the case of *Shumate v. Patterson,* 943 F.2d 362 (4th Cir. 1991).

19. Retirement plans are "ERISA-qualified" if they contain enforceable nonalienation clauses, regardless of the fact that such plans are not "tax-qualified": *Healey v. Meinen (In re Meinen),* 228 B.R. 368, 380 (Bankr.W.D.Pa. 1998) *In re Hanes,* 162 B.R. 733, 738 (Bankr. E.D.Va.1994). *Contra, In re Hall,* 151 B.R. 412, 419–420 (Bankr.W.D.Mich.1993); *In re Sirois,* 144 B.R. 12, 13–14 (Bankr.D.Mass. 1992).

20. Plans that are otherwise ERISA-qualified may not be excluded from property of the bankruptcy estate if they were not properly created nor administered in conformity with ERISA. *In re Goldschein,* 244 B.R. at 601 (Bankr.D.Md.2000); *In re Fernandez,* 236 B.R. 483, 487 (Bankr.M.D.Fla.1999); *McGraw v. Society Bank & Trust (In re Bell & Beckwith),* 5 F.3d 150, 153 (6th Cir.1993).

*Be Protected in Bankruptcy Despite Patterson v. Shumate,* 72 FLA. B.J. 34 (1998); Jeffrey R. Houle, *ERISA–Qualified Pensions Plans as Property of the Bankruptcy Estate: A Survey of Creditors' Rights to Participants' Pension Assets Pre-and PostPatterson v. Shumate,* 29 HOUS. L. REV. 763 (1992).

The test for exclusion under 11 U.S.C. § 541(c)(2) is whether the property in question is subject to restrictions on transfer and attachment that are enforceable under "applicable nonbankruptcy law."[21] Applicable nonbankruptcy law is any law—State or Federal, aside from the Bankruptcy Code—that would prevent ordinary creditors of the debtor from reaching the asset.[22]

The Plan in question is not "ERISA-qualified,"[23] because as a "governmental pension plan,"[24] the Plan in the instant case is not governed by ERISA, 29 U.S.C. § 1103(b)(1).[25] *In re Dunn,* 215 B.R. 121 (Bankr.E.D.Mich.1997). However, the inquiry regarding excludability does not end here, because a governmental pension plan may nevertheless be excluda-

**21.** Anthony Michael Sabino & John P. Clarke, *The Last Line of Defense: The New Test for Protecting Retirement Plans From Creditors in Bankruptcy Cases,* 48 ALA. L. REV. 613, (1997).

**22.** Because a tax lien of the IRS was not at issue here, this Court does not decide whether the presence of an "extraordinary creditor," such as the IRS, which could arguably enforce a lien for unpaid taxes against a debtor's pension would result in the inclusion of the pension plan in the bankruptcy estate. *See* Michael A. Urban, *Revisiting the Scope and Implications of Patterson v. Shumate in Light of In re Lyons,* 3 AM. BANKR. INST. L. REV. 379, 391–406 (1995); *Jones v. Internal Revenue Service (In re Jones),* 206 B.R. 614 (Bankr.D.C.1997). However, whether or not a retirement plan is subject to an IRS levy or tax lien would seem to have no effect upon a pension as property of the bankruptcy estate. It would simply mean that upon the filing of bankruptcy, the automatic stay would not protect a debtor's pension that was not a part of the bankruptcy estate. In *Dinatale v. U.S. (In re Dinatale),* 235 B.R. 569 (Bankr.D.Md. 1999), Chief Judge Mannes of this Court held that a retirement plan that a debtor had exempted from property of his bankruptcy estate remained subject to federal tax liens. There the issue of excludability of the plan was not at issue. In the case of *In re Street,* 165 B.R. 408 (Bankr.D.Md.1994), Judge Mannes held that unavoided tax liens survive a bankruptcy discharge, although the debtor's *in personam* liability does not. By implication, if a debtor's pension that is subject to a tax lien does not become part of the bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2), the bankruptcy filing would have no effect upon either the tax lien or the debtor's *in personam* liability for unpaid taxes. See Amy Madigan, *Using Unfiled Dischargeable Tax Liens to Attach to Erisa-qualified Pension Plan Interests after Patterson v. Shumate,* 14 BANKR. DEV.J. 461, 462–63 (1998).

There is precious little property that is exempt from levy by the IRS for unpaid taxes, according to 26 U.S.C. § 6334. If exemption from an IRS levy were the test for excludability from property of the estate, *Patterson v. Shumate* would be nullified whenever the IRS had an enforceable tax lien on a pension. *See* Lisa M. Smith, *ERISA Qualified Pension Plans as part of the Bankruptcy Estate after Patterson v. Shumate,* 21 CARDOZO L. REV. 2119 (2000), an unorthodox view with which this Court is intrigued but one with which it disagrees.

**23.** *See* Kathleen Bicek Bezdichek, *CONSTRUCTION AND APPLICATION OF § 4(B) OF EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 (ERISA) (29 U.S.C.A. § 1003(B)), WHICH PROVIDES THAT PARTICULAR EMPLOYEE BENEFIT PLANS ARE NOT COVERED BY ERISA,* 135 A.L.R. Fed. 533 (1996).

**24.** Defined by ERISA as "a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." 29 U.S.C. § 1002(32); *Canady v. Washington Metropolitan Area Transit Authority,* 909 F.Supp. 324, 327 (D.Md.1995).

**25.** Whether a particular pension plan is ERISA-qualified relates only to the excludability, but not the exemptibility of the plan. *In re Kellogg,* 179 B.R. 379, 388 (Bankr. D.Mass.1995) (simplified employee pension plan (SEP) that was not enforceable pursuant to ERISA might nevertheless be exemptible under Federal exemption statute if "reasonably necessary" for the support of the debtor and his spouse).

ble from the debtor's bankruptcy estate by reason of other applicable nonbankruptcy law. *See Pitrat v. Garlikov,* 992 F.2d 224 (9th Cir.1993) (Decisions of bankruptcy and district courts reversed and remanded to determine if non-ERISA plans contained anti-alienation clauses to exclude plans); *In re Bizon,* 28 B.R. 886 (Bankr. D.Md.1983), *aff'd sub nom. SSA Baltimore Federal Credit Union v. Bizon,* 42 B.R. 338 (D.Md.1984) (civil service retirement plan was excludable from the bankruptcy estate as a spendthrift trust recognized under Maryland law). *See also* Ray, *Protecting Pension Assets in Personal Bankruptcy,* 68 ST. JOHN'S L. REV. 409, 416 (1994) ("The Supreme Court's rationale in *Shumate* should also be extended to non-ERISA, tax-qualified pension plans and ERISA-governed, non-tax-qualified pension plans. If a pension plan is not subject to ERISA because, for example, it is a governmental pension plan, but is a tax-qualified pension plan under I.R.C. section 401(a) or section 403(a), then the debtor's interest could be excluded based on the anti-alienation and assignment provision of I.R.C. section 401(a)(13). (Note, however, that this provision is not technically required to be included in a tax-qualified governmental pension plan.)")

This Plan is a tax-qualified governmental plan under the Internal Revenue Code, 26 U.S.C. § 457. Section 457 plans are "eligible deferred compensation programs available to employees of state and local governments and various tax exempt organizations." RICHARD D. BROWN, "Pension and Profit–Sharing Plans Distinguished," *Understanding ERISA 1993,* n. 20 at 4 (Joseph R. Simone, ed.1993). State and county governments are "eligible employers" under Section 457 as being exempt from Federal taxation.[26] Deferred compensation plans are not tax-exempt, but tax-deferred until the deferred compensation "is paid or otherwise made available to the participant or other beneficiary." 26 U.S.C. § 457(a). Section 457(b) defines a deferred compensation plan as a plan established and maintained by an eligible employer, and provides that all amounts of compensation, all property and rights purchased with such amount, and all income attributable to such amounts, property or rights are treated as being solely the employer's property, subject only to the claims of the employer's creditors. 26 U.S.C. § 457(b)(6). The Plan in question is not a rabbi trust, contrary to the debtors' argument.[27]

**26.** A. Thomas Brisendine, *Employee Retirement and Welfare Plans of Tax–Exempt and Governmental Employers—Current Issues in Section 457 Deferred Compensation Plans,* SE04 ALI–ABA 299 (1999).

**27.** *See* C. Wells Hall, III, *Nonqualified Deferred Compensation Rabbi and Secular Trusts,* SD07 ALI–ABA 441 (1998).

Sections 671 through 679 of the Internal Revenue Code govern rabbi or grantor trusts. 26 U.S.C. §§ 671–679. The subject Plan in the instant case made no reference to these sections, nor did it refer to itself as a rabbi or grantor trust. *Cf. Goodman v. R.T.C.,* 7 F.3d 1123 (4th Cir.1993), where the Fourth Circuit stated:

Each Trust Agreement states that it was "intended to be a grantor trust," and "that the Employer shall be treated as the owner of all the corpus and income of said trust under Section 671 through 679...." Trust Agreements P B. Thus, the objective of the Trust Agreements was to obtain the favor-

able tax treatment afforded to grantor trusts; however, such advantageous treatment is not extended without certain strings attached. Federal tax law conditions the beneficial tax treatment of a grantor trust on the requirement that the trust fund remains subject to the claims of the employer's creditors as if the assets were the general assets of the employer. *See* Mertens *Law of Federal Income Taxation* § 25B.212 (1988); *see also* Priv.Ltr.Rul 8113107, 1980 WL 137740 (December 31, 1980). The employer is treated as the owner of the trust assets, and the recipients are never assured of a payment because the assets remain subject to the claims of the employer's creditors. "In reality, the recipient receives only the company's unsecured promise to pay benefits and has no right against any assets other than the rights of a general unsecured creditor of the company ... The employer will be treated as the owner of the trust." Mertens *Law of Federal Income Taxation* § 25B.212 (1988).

The Plan in this case is in the nature of a spendthrift trust. *See Morter v. Farm Credit Services*, 937 F.2d 354, 357 (7th Cir.1991); *Anderson v. Raine (In re Moore)*, 907 F.2d 1476 (4th Cir.1990); *Humphrey v. Buckley (In re Swanson)*, 873 F.2d 1121, 1123 (8th Cir.1989); *McLean v. Central States, Southeast and Southwest Areas Pension Fund*, 762 F.2d 1204, 1207 (4th Cir.1985). The Plan itself specified that it is governed by Maryland law. *See Jacobs v. Shields*, 116 B.R. 134, 136 (D.Minn.1990) (Michigan law was held to apply to determine whether a pension plan was a spendthrift trust where the plan so provided, the employer was headquartered in Michigan, the trust was created there and the *res* was held there.) The State law of exemptions "is not restricted to Maryland statutory law, and includes Maryland common law." *In re Ford*, 3 B.R. 559, 574 (Bankr.D.Md.1980), *aff'd sub nom. Greenblatt v. Ford (In re Ford)*, 638 F.2d 14 (4th Cir.1981). Maryland courts have recognized the validity and insularity of spendthrift trusts for many years.[28]

7 F.3d at 1127. See also *Cortina v. Sovran Bank, N.A.*, 927 F.Supp. 439, 442 (S.D.Fla. 1994).

The Plan provisions in this case do not comport with those contained in a model rabbi trust plan promulgated by the Internal Revenue Service. The Plan refers to itself as "a deferred compensation plan and trust" and cites Section 35–601 of the State Personnel and Pensions Article for its legal foundation. However, rabbi or grantor trusts have been held not to constitute deferred compensation plans under the Internal Revenue Code. *MacGregor v. Board of Trustees of the Teachers' Retirement System of the State of Illinois*, 263 Ill.App.3d 439, 636 N.E.2d 83, 200 Ill.Dec. 892 (1994).

The essential feature of a rabbi trust missing in the instant case is the noncontributory aspect of the payment by the employee. In a rabbi trust, the employer makes the contribution to the trust in the employee's name, but the fund remains property of the employer. *Maher v. Harris Trust and Savings Bank*, 75 F.3d 1182 (7th Cir.1996) A rabbi trust is generally considered to be an unfunded, noncontributory plan intended to be supplementary income to be paid to a highly-compensated executive of an entity or to a specialized group of employees. In the instant case, the amount of the payment to the plan represented a percentage deducted from the employee's salary. The debtor's interest in her contributory plan is vested, based upon past service and contingent only upon her death, retirement, or termination from service. Her interest is not contingent upon future service, as in a rabbi or grantor trust. *Cf. MacGregor*, 263 Ill.App.3d at 441, 200 Ill. Dec. 892, 636 N.E.2d at 84 (1994) ("Receipt of the compensation by the [employees] is contingent on the future performance by them of 'substantial service.' ").

**28.** *Mike Smith Pontiac, GMC, Inc. v. Mercedes–Benz of North America, Inc.*, 356 Md. 542, 741 A.2d 462 (1999); *In re Trust of Lane*, 323 Md. 188, 592 A.2d 492 (1991); *Prince George's County Police Pension Plan v. Burke*, 321 Md. 699, 584 A.2d 702 (1991); *Mahan v. Mahan*, 320 Md. 262, 577 A.2d 70 (1990); *State Cent. Collection Unit v. Brent*, 71 Md. App. 265, 525 A.2d 241 (1987), *aff'd sub nom. Brent v. State of Md. Cent. Collection Unit*, 311 Md. 626, 537 A.2d 227 (1988); *Rosenberg v. Rosenberg*, 64 Md.App. 487, 497 A.2d 485 (1985); *Hoffman Chevrolet, Inc. v. Washington County Nat. Sav. Bank*, 50 Md.App. 594, 439 A.2d 50 (1982), *aff'd in part and rev'd in part*, 297 Md. 691, 467 A.2d 758 (1983); *Bernstein v. Kapneck*, 290 Md. 452, 430 A.2d 602 (1981); *Fico, Inc. v. Ghingher*, 287 Md. 150, 411 A.2d 430 (1980); *Watterson v. Edgerly*, 40 Md.App. 230, 388 A.2d 934 (1978); *U.S. v. Williams*, 279 Md. 673, 370 A.2d 1134 (1977); *Jones v. Endslow*, 23 Md.App. 578, 328 A.2d 339 (1974); *Stern v. Horner*, 22 Md.App. 421, 324 A.2d 134 (1974); *Weaver v. Garrett*, 13 Md.App. 283, 282 A.2d 509 (1971); *Bregel v. Julier*, 253 Md. 103, 251 A.2d 891 (1969); *Raible v. Raible*, 242 Md. 586, 219 A.2d 777 (1966); *Smolin v. First Fidelity Sav. and Loan Ass'n*, 238 Md. 386, 209 A.2d 546 (1965); *Rappold v. Rappold*, 224 Md. 131, 166 A.2d 897 (1961); *Crouch v. Mercantile–Safe Deposit & Trust Co.*, 220 Md. 140, 151 A.2d 757 (1959); *Kirkland v. Mercantile–Safe Deposit & Trust Co. of Baltimore*, 218 Md. 17, 145 A.2d 230 (1958); *McCabe v. McCabe*, 210 Md. 308, 123 A.2d 447 (1956); *Zouck v. Zouck*, 204 Md. 285, 104 A.2d 573 (1954); *Liberty Trust Co. v. Weber*, 200 Md. 491, 90 A.2d 194 (1952); *Black v. Gary*, 199 Md. 354, 86 A.2d 480 (1952); *Caughy v. Safe Deposit & Trust Co.*, 196 Md. 252, 76 A.2d 323 (1950); *Hitchens v. Safe Deposit & Trust Co. of Baltimore*, 193 Md. 53, 66 A.2d 93 (1949); *Hitchens v. Safe Deposit & Trust Co. of Baltimore*, 193 Md. 62, 66 A.2d 97 (1949); *Walker v. Safe Deposit & Trust Co. of Baltimore*, 192 Md. 695, 65 A.2d 311 (1949); *Safe Deposit & Trust Co. of Baltimore v. Robertson*, 192 Md. 653, 65 A.2d 292

Nevertheless, a spendthrift trust is not a stated requirement of Section 541(c)(2). The section permits a debtor to exclude from property of the estate any interest in a plan or trust that contains an antialienation clause [29] that is enforceable under either State or Federal nonbankruptcy law.

(1949); *Sines v. Shipes,* 192 Md. 139, 63 A.2d 748 (1949); *Keen v. Brooks,* 186 Md. 543, 47 A.2d 67 (1946); *Knox v. Stamper,* 186 Md. 238, 46 A.2d 361 (1946); *Board of Visitors and Governors of Washington College v. Safe Deposit & Trust Co. of Baltimore,* 186 Md. 89, 46 A.2d 280 (1946); *Fetting v. Flanigan,* 185 Md. 499, 45 A.2d 355 (1946); *Medwedeff v. Fisher,* 179 Md. 192, 17 A.2d 141(1941); *Bauernschmidt v. Safe Deposit & Trust Co. of Baltimore,* 176 Md. 351, 4 A.2d 712 (1939); *Michaelson v. Sokolove,* 169 Md. 529, 182 A. 458 (1936); *Johnson v. Stringer,* 158 Md. 315, 148 A. 447 (1930); *Crise v. Smith,* 150 Md. 322, 133 A. 110 (1926); *Manders v. Mercantile Trust & Deposit Co.,* 147 Md. 448, 128 A. 145 (1925); *Peter v. Peter,* 136 Md. 157, 110 A. 211 (1920); *Plitt v. Yakel,* 129 Md. 464, 99 A. 669 (1916); *Safe Deposit & Trust Co. of Baltimore v. Independent Brewing Ass'n,* 127 Md. 463, 96 A. 617 (1916); *Holloway v. Safe–Deposit & Trust Co. of Baltimore,* 124 Md. 539, 93 A. 154 (1915); *Holloway v. Safe Deposit & Trust Co. of Baltimore,* 122 Md. 620, 90 A. 95 (1914); *Houghton v. Tiffany,* 116 Md. 655, 82 A. 831 (1911); *Wenzel v. Powder,* 100 Md. 36, 59 A. 194 (1904); *Carroll v. Smith,* 99 Md. 653, 59 A. 131 (1904); *Jackson Square Loan & Sav. Ass'n v. Bartlett,* 95 Md. 661, 53 A. 426 (1902); *Brown v. Mercantile Trust & Deposit Co.,* 87 Md. 377, 40 A. 256 (1898); *Brown v. McGill,* 87 Md. 161, 39 A. 613 (1898); *Reid v. Safe–Deposit & Trust Co.,* 86 Md. 464, 38 A. 899 (1897); *Maryland Grange Agency v. Lee,* 72 Md. 161, 19 A. 534 (1890); *Smith v. Towers,* 69 Md. 77, 15 A. 92 (1888). *See also Togut v. Hecht (In re Hecht),* 54 B.R. 379 (Bankr.S.D.N.Y.1985) (Corpus and income from testamentary spendthrift trust could not be reached by creditors, but income actually received by the debtor within 180 days of the filing of bankruptcy became property of the estate, applying Maryland law). "Trusts in which the interest of a beneficiary cannot be assigned by him or reached by his creditors have come to be known as 'spendthrift trusts.' " AUSTIN WAKEMAN SCOTT, *Abridgment of the Law of Trusts,* § 151 (1960 ed.). "Trusts provided that income payable to any beneficiary should be paid 'into the hands' of the beneficiary 'and not into the hands of another,' and that neither income nor principal should be subject to 'any assignment or anticipation by any beneficiary,' and, hence, under Maryland law were spendthrift

trusts. The purpose of a spendthrift trust is to protect a beneficiary from his own improvidence by protecting his income (and here, principal, also) from his creditors and rendering it inalienable by him before payment. Maryland law deems a spendthrift trust valid and enforceable." *Wohl v. Keene,* 476 F.2d 171, 173, n. 2 (4th Cir.1973) (*citations omitted* ). The effect of a spendthrift trust is that "a beneficiary [cannot] mortgage, pledge, or otherwise encumber his interest in the corpus of the trust or his right to the income; it [is] not liable for his debts and even the income [is] not his until placed in his hands." *Smith v. U.S.,* 373 F.2d 419, 422 (4th Cir.1966) (applying District of Columbia law). *Contra, Luring v. Administrator, Ohio Public Employees Deferred Compensation Program (In re Petrey),* 116 B.R. 95 (Bankr.S.D.Ohio 1990) (The "validity of spendthrift trusts is an open question in Ohio," *quoting Sherrow v. Brookover,* 174 Ohio St. 310, 189 N.E.2d 90, 92 (1963)). Nevertheless, the Luring court held that the plan in question might still be exemptible, although not excludable. A number of Ohio bankruptcy decisions have held governmental deferred compensation plans to be includable in the bankruptcy estate if the debtor had an identifiable interest in the fund. *See, for example, In re Hansen,* 111 B.R. 647 (Bankr. N.D.Ohio 1990); *Gilbert v. Osburn (In re Osburn),* 56 B.R. 867 (Bankr.S.D.Ohio 1986). This appears to be an incorrect basis upon which to put such plans within the reach of bankruptcy trustees. The case of *McDonald v. Metz (In re Metz),* 225 B.R. 173 (9th Cir. BAP 1998), held that an ERISA-qualified plan was also excludable as a spendthrift trust because it contained the necessary restraints on alienation required under California law. But *In re Dunn,* 215 B.R. 121 (Bankr. E.D.Mich.1997), held that a governmental annuity savings plan could neither be excluded nor exempted because it amounted to a "self-settled spendthrift trust." *See* David B. Young, *The Pro Tanto Invalidity of Protective Trusts: Partial Self–Settlement and Beneficiary Control,* 78 MARQ. L. REV. 807 (1995).

**29.** See *Hermes v. Ribitwer (In re Hermes),* 239 B.R. 491, 494 (E.D.Mich.1999) debtor's IRA that did not contain antialienation clause was not excludable from property of the bankruptcy estate.

*Patterson,* 504 U.S. at 758, 112 S.Ct. at 2246, 119 L.Ed.2d at 527 (1992).[30]

 According to the view expressed by Judge Joan N. Feeney in the case of *In re Silviera,* 186 B.R. 168 (Bankr.D.Mass.1995), *Patterson* requires a new analysis to determine excludability of a retirement plan:

> In *Patterson,* the Supreme Court held that, "plainly read," section 541(c)(2) does not limit the phrase "applicable nonbankruptcy law" to state law and in particular state spendthrift trust law, 504 U.S. at 758, 112 S.Ct. at 2246–47, and that the debtor's ERISA-qualified pension plan, which did not satisfy the requirements of a spendthrift trust but which had the anti-alienation provision required for qualification under section 206(d) of ERISA, 29 U.S.C. § 1056(d)(1), satisfied the literal terms of section 541's transfer restriction because the restriction was enforceable under ERISA. *Id.* at 549. Referring to pension plans established by governmental entities and churches, the Court noted in *dicta* that a debtor's interest in certain plans may not be excluded from the bankruptcy estate because of the absence of anti-alienation provisions enforceable under applicable nonbankruptcy law. 504 U.S. at 762–63, 112 S.Ct. at 2248–49. Consequently, the Supreme Court's decision limits the focus under section 541(c)(2) to finding three elements: 1) a beneficial interest belonging to the Debtor in a trust; 2) a restriction on the transfer of the Debtor's beneficial interest in the trust; and 3) the enforceability of the restriction under applicable nonbankruptcy law. *Matter of Fink,* 153 B.R. 883, 885 (Bankr.D.Neb.1993). Thus, the element of control and access to the retirement funds which featured prominently in the analyses of the courts in

*Swanson* [873 F.2d 1121 (8th Cir.1989) ] and *Morter* [937 F.2d 354 (7th Cir. 1991) ] is no longer determinative in situations where the applicable nonbankruptcy law is law other than state spendthrift trust law.

> This was emphasized by the court in *In re Conner,* 165 B.R. 901 (9th Cir. BAP 1994). In that case, the Bankruptcy Appellate Panel of the Ninth Circuit noted that in *Patterson* the debtor controlled ninety-six percent of the voting stock of the corporation that had established the ERISA qualified plan and, therefore, technically could terminate the plan at will. According to the court, control over the funds in the debtor's pension plan was not an issue in the case, as the Supreme Court did not distinguish between ERISA-qualified plans where the debtor did or did not have control, 165 B.R. at 902. See also [*Arkison v. UPS Thrift Plan* ] *In re Rueter,* 11 F.3d 850 (9th Cir.1993) (voluntary contributions by an employee/debtor to an ERISA qualified plan, which could be withdrawn at any time by the debtor, qualified for exclusion under section 541(c)(2)).

> Although the Court has been unable to locate any post-*Patterson* decisions involving state created public employee retirement plans containing anti-alienation provisions on point, the Court notes that in *Whetzal v. Alderson,* [32 F.3d 1302 (8th Cir.1994) ], the Eighth Circuit determined that a former federal employee's right to receive a lump-sum retirement benefit was excluded from the bankruptcy estate. The debtor had participated in the Civil Service Retirement System and contributed over $30,000 toward retirement benefits. Upon retirement, he had the option of

---

30. In the context of Chapter 13 cases, such assets have been held not to be includable in the property of the bankruptcy estate for the purpose of calculating the debtor's disposable income to fund a plan. *Solomon,* 67 F.3d 1128 (4th Cir.1995); *Huisinga v. Koch (In re Koch),* 187 B.R. 664 (D.S.D.1995)(worker's compensation benefits). *But see, In re Johnson,* 241 B.R. 394 (Bankr.E.D.Tex.1999) (withdrawal from debtor's retirement plan indicating that plan was within debtor's control required plan's inclusion in debtor's disposable income for the purposes of denying confirmation to his Chapter 13 plan).

withdrawing his benefits as a lump sum. However, he did not exercise that right. Nevertheless, several creditors filed a complaint seeking the transfer of the benefits to the bankruptcy estate. The bankruptcy judge determined that, because the debtor had the right to request a lump-sum benefit at the time he filed for bankruptcy, the trustee likewise had the right to exercise the option. The district court affirmed. On appeal, the Eighth Circuit found that a restriction on transfer of the debtor's beneficial interest applied to both the lump sum and annuity provisions of the plan and, thus, the lump sum provision was within the scope of section 541(c)(2). The court stated that "[a]lthough *Shumate* was an ERISA case, the same basic concern for pension benefits applies to federal employees as well as those in the private sector." 32 F.3d at 1304.

*Silviera,* 186 B.R. at 171–72. In the instant case, this Court has focused on the factors delineated in *Silviera,* which it has modified, as follows, by adding requirements of good faith.

1. Does the debtor have a beneficial interest in a *bona fide* trust?

Yes. The Plan in the instant case is an express trust, provided for by statute, but actually created in writing by the intention of the parties themselves, one of which is the State of Maryland.[31] *See In re Shank,* 240 B.R. 216, 221–22 (Bankr.D.Md.1999), where Judge Derby of this Court stated:

Under Maryland law, the creation of an express trust must include the following: (1) property, known as a *res,* that is owned by the settlor; (2) a settlor who is competent to create a trust; (3) a person capable of holding the property as trustee; and (4) a beneficiary, the person for whose benefit the *res* is held. *See Sieling v. Sieling,* 151 Md. 536, 135

A. 376, 382 (1926); *Waesche v. Rizzuto,* 224 Md. 573, 583, 168 A.2d 871 (1961). The creation of an express trust requires an intention on the part of the settlor to create a trust. See *Sieling,* 135 A. at 382. The general requirements for the making of a trust are well settled. No particular formalism is necessary; nor is notification to either the beneficiary or the depositary of the trust *res* an absolute prerequisite. However, there must be not only an intent to make a trust, but also some "manifestation of intention," i.e., "the external expression of intention as distinguished from undisclosed intention." 1 *Restatement,* Trusts § 2, comment G (1935), and *see Id.* § 4, which requires such manifestation of intention "expressed in a manner which admits of its proof in judicial proceedings."

*Id. See also Spinoso v. Heilman (In re Heilman),* 241 B.R. 137, 161 (Bankr.D.Md. 1999) (whether an express trust has been created is a question of intention, *citing Kozlowska v. Napierkowski,* 165 Md. 620, 170 A. 193 (1934); *Foschia v. Foschia,* 158 Md. 69, 148 A. 121 (1930)).

2. Has the plan been created and administered in good faith?

Yes. There is no evidence or allegation in the record to the contrary. The Board of Trustees of the Maryland Teachers and State Employees Supplemental Retirement Plans adopted the subject Plan with the intent that it operate as a tax-deferred compensation plan under 26 U.S.C. § 457.[32] *Goldschein,* 244 B.R. at 602.

3. Is there a restriction on the transfer of the debtor's beneficial interest in the trust?

Yes. *See* §§ 5.10, 5.11 of the Plan. The Plan contains a restriction on creditors of participants and beneficiaries. It also contains an anti-assignment clause that pro-

---

**31.** "Notice 98–8 [of the IRS] provides that in order for a governmental Section 457(b) plan to satisfy the trust requirements of [Internal Revenue] Code Section 457(g)(1), a trust must be established pursuant to a written agree-

ment that constitutes a valid trust under State law." Siske, *supra* note 37.

**32.** *See* Brisendine, *supra* note 35, at 305–07.

hibits participants and beneficiaries from selling, assigning or transferring rights to receive payment under the Plan.

4. Has the debtor engaged in any fraudulent conduct in connection with the plan or violated any of the plan provisions?

No. There have been no such allegations or offers of proof to this effect.

5. Is the restriction on the transfer of the debtor's beneficial interest enforceable under applicable nonbankruptcy law?

Yes. Applicable nonbankruptcy law in the instant case is found in the Annotated Code of Maryland, State Personnel and Pensions Article, Sections 21–502 and 35–601, both previously quoted, which provide for the creation of a deferred compensation plan for State employees that is beyond the reach of creditors as required by Section 457 of the Internal Revenue Code.

The Plan appears to enjoy tax-qualified status under the Internal Revenue Code. Indeed, there has been no suggestion nor evidence presented to the effect that the instant Plan is not "tax qualified" pursuant to Section 457 of the Internal Revenue Code. This statute is yet another example of applicable nonbankruptcy law, albeit Federal law, that provides for the nonalienation of the subject Plan.[33] Leonard S. Hirsh, "An Introduction to Basic Employee Retirement Benefits Plan Qualification Requirements," *Understanding ERISA 1999*, 445 PLI/TAX 23, 27–8 (1999).

The hardship withdrawal provisions of the Plan do not mandate the Plan's inclusion in the bankruptcy estate. The Court finds that the provisions in the Plan governing hardship withdrawals did not give participants the unfettered power to invade the trust corpus, but rather provided strictly limited bases upon which to *request* withdrawals upon narrowly defined emergency conditions that must be approved by an independent third party. It is also noted that the Plan provides that hardship withdrawals may not be allowed for "normally budgetable expenditures, such as purchase of an automobile, or home, or provision for educational expenditures." Plan, § 4.02(d). According to the analysis endorsed above, this finding is not a necessary condition for excludability of the Plan. Pre-*Patterson* cases that have considered the neutralizing effects of hardship withdrawal provisions on prohibitions against a debtor's ability to reach funds

33. Some cases hold that such Section 457 plans are not actually trusts and therefore are not excludable. *See, for example, In re Benton*, 237 B.R. 353 (Bankr.E.D.Mich.1999); *Walsh v. Commonwealth of Pennsylvania, Dept. of Public Welfare (In re Kingsley)*, 181 B.R. 225 (Bankr.W.D.Pa.1995); *Humphrey v. Buckley (In re Swanson)*, 873 F.2d 1121 (8th Cir.1989). Interestingly, the case of *Hannan v. PEBSCO (In re Pedersen)*, 155 B.R. 750 (Bankr.S.D.Iowa 1993), decided under former law, held that a Section 457 plan could not be excluded from the bankruptcy estate because it *was* a trust and as such did not comply with former Section 457. Other cases have held that such governmental plans are not excludable from property of the estate because they are "self-settled" trusts. *See, for example, In re Dunn*, 215 B.R. 121 (Bankr.E.D.Mich. 1997), and *In re Hansen*, 111 B.R. 647 (Bankr.N.D.Ohio 1990). This Court also finds this to be an incorrect view of the law. It is the government employer that acts as settlor of the trust by providing the framework for deferring the participant's compensation for retirement. The only control the participant/employer has in these plans is to decide how much to contribute from her paycheck on each payday. *See In re Childs*, 129 B.R. 14, 17 (Bankr.D.Conn.1991) ("The debtor's interest in the Connecticut retirement system is hardly self-settled in the traditional sense. It is a nonwaivable condition of employment that a portion of the employee's salary be taken to fund a pension system for reasons seemingly congruent to those underlying the federal social security system.") While the debtor's contribution to the Plan in the instant case was not compulsory, it was permitted by the employer as an incident of her employment. The Seventh Circuit correctly held in *Morter v. Farm Credit Services*, 937 F.2d 354 (7th Cir.1991), that a plan need not comply with all the formalities of a traditional spendthrift trust, but merely contain the restraints on alienation found in such a spendthrift trust, to be excludable. *Accord, Ehrenberg v. Southern California Permanente Medical Group (In re Moses)*, 167 F.3d 470 (9th Cir.1999). *Contra, In re Kuraishi*, 237 B.R. 172 (Bankr.C.D.Cal.1999).

held in trust are either distinguishable or, if applicable, no longer good law. For example, the case of *Employee Benefits Committee v. Tabor (In re Cress)*, 127 B.R. 194 (S.D.Ind.1991), *aff'g Tabor v. Employee Benefits Committee (In the Matter of Cress)*, 121 B.R. 1006 (Bankr.S.D.Ind. 1990), holding that the debtor's ability to make withdrawals for financial hardships from a Section 401k *savings plan* nullified its status as a spendthrift trust, did not deal with a retirement plan. The case of *Hartvig, Inc. v. Kellas (In re Kellas)*, 113 B.R. 673, 675 (D.Or.1990), upholding the validity of a plan as a spendthrift trust that contained a hardship withdrawal provision similar to the one in the instant case, need not proceed to the point of demonstrating the existence of a spendthrift trust under the *Patterson* analysis.

In accordance with the *Silviera* decision, this Court has found cases in which ERISA-qualified plans that contained hardship withdrawal provisions nearly identical to or much broader than that in the instant case that nevertheless were held excludable from the estate. *Healey v. Meinen (In re Meinen)*, 228 B.R. 368, 388 (Bankr.W.D.Pa.1998) (Hardship withdrawal provisions were "not impermissibly liberal."); *In re Destremps*, 193 B.R. 85 (Bankr.D.Mass.1996) ("The way in which the plan administrator construes the term 'unforeseeable emergency,' payments for that reason are only made to provide future earnings in a time of need which is comparable to disability, illness or age."); *In re Putman*, 110 B.R. 783 (Bankr. E.D.Va.1990) (Debtor's right to hardship withdrawal from ERISA-qualified profit sharing plan was strictly within the employer's discretion, but if such withdrawal were made during the pendency of the case, they should be turned over to the bankruptcy trustee.); *Matter of Tisdale*, 112 B.R. 61 (Bankr.D.Conn.1990) (The debtor's control over plan fund was limited "by way of loan or through hardship withdrawal only to so much of the . . . funds as are necessary for the debtor's support

(medical, educational or purchase of a home).").

'The debtor's separation from service as an occurrence that allows her to reach the trust corpus does not mandate the inclusion of the Plan in property of the estate.' As indicated, in *Patterson v. Shumate*, where the debtor was the beneficiary of an ERISA-qualified plan, owned 96% of the employer corporation's voting stock and therefore could undoubtedly have terminated the plan at any time, the Supreme Court upheld the plan's excludability because of its anti-alienation provisions that were enforceable under ERISA. *See In re Baker*, 114 F.3d 636 (7th Cir.1997) (Although *Patterson* coined the phrase "ERISA-qualified pension plan," such term is not found in § 541(c)(2), and the Supreme Court indicated that "ERISA-qualified" meant nothing more than that the plan contained the anti-alienation clause required in the ERISA law.); *see also In the Matter of Sanders*, 969 F.2d 591 (7th Cir.1992), (holding that a Chapter 7 trustee could not compel the debtor's turnover of her pension plan where she had no present right to receive the plan contributions, even though she was entitled to recover them upon death or resignation). *Accord, Magill v. State Employees Retirement System of Illinois (In re Lyons)*, 957 F.2d 444 (7th Cir.1992) (trustee could not compel turnover of pension proceeds to which the debtor has no present right, even if the pension were property of the estate.).

Because The Maryland State Employees Deferred Compensation Plan and Trust has restraints on alienation by participants and upon seizure by creditors of participants and protects the assets from the reach of the Chapter 7 trustee in conformity with *Patterson*, 504 U.S. 753, 112 S.Ct. 2242, this Court finds that the Plan is excluded from the bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2). Therefore, the debtors' latest attempt to exempt from the estate only a portion of the Plan will be deemed to be moot, but the trustee's ob-

jection [P. 27] to the debtors' amended exemptions will be OVERRULED.

ORDER ACCORDINGLY.